No. 22-40707

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔦𝔣𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

UNITED STATES OF AMERICA, EX REL. CALEB
HERNANDEZ AND JASON WHALEY, RELATORS, ET AL.,

*Plaintiff*,

*v.*

TEAM FINANCE, L.L.C.; TEAM HEALTH,
INCORPORATED; TEAM HEALTH HOLDINGS,
INCORPORATED; AMERITEAM SERVICES, L.L.C.;
HCFS HEALTH CARE FINANCIAL SERVICES, L.L.C.;
QUANTUM PLUS, L.L.C., DOING BUSINESS AS
TEAMHEALTH WEST,

*Defendants-Appellees*,

*v.*

LOREN ADLER,

*Movant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Texas, No. 2:16-CV-432

## OPENING BRIEF OF APPELLANT

Martin Woodward
KITNER WOODWARD PLLC
13101 Preston Road,
Suite 110-3323
Dallas, TX 75240
(214) 443-4300
martin@kitnerwoodward.com

Ellen Noble
Leah Nicholls
PUBLIC JUSTICE
1620 L St. NW
Washington, DC 20036
(240) 620-3645
enoble@publicjustice.net

*Counsel for Movant-Appellant Loren Adler*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to 5th Cir. R. 28.2.1, the number and style of the case are as follows: *United States, ex rel. Caleb Hernandez & Jason Whaley v. Team Finance, L.L.C.*, 5th Cir. No. 22-40707.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this court may evaluate possible disqualification or recusal.

1. **Plaintiffs**

United States of America

State of Connecticut

State of Florida

State of Georgia

State of Indiana

State of Louisiana

Commonwealth of Massachusetts

State of Tennessee

State of Texas

Caleb Hernandez, Relator

Jason Whaley, Relator

## 2. **Counsel for Plaintiffs**

James Garland Gillingham, United States Attorney's Office

Kelly A Quinn, United States Department of Justice

Bradley Walker Beskin, Nix, Patterson & Roach LLP

Trey Duck, Nix, Patterson & Roach LLP

C. Carey Patterson, Nix, Patterson & Roach LLP

Michael Bryan Angelovich, Nix, Patterson & Roach LLP

Cody Lee Hill, Nix, Patterson & Roach LLP

## 3. **Defendants-Appellees**

Team Finance, LLC

Team Health, Inc.

Team Health Holdings, Inc.

Ameriteam Services, LLC

HCFS Health Care Financial Services, LLC

Quantum Plus, LLC (d/b/a TeamHealth West)

## 4. **Counsel for Defendants-Appellees**

Thomas M Melsheimer, Winston & Strawn LLP

Alex Wolens, Winston & Strawn LLP

Chad Brian Walker, Winston & Strawn LLP

John Thomas Sullivan, Winston & Strawn LLP

Linda T. Coberly, Winston & Strawn LLP

Lauren Gailey, Winston & Strawn LLP

Michael Andrew Bittner, Winston & Strawn LLP

Michael Brett Johnson, Winston & Strawn LLP

Paula Weems Hinton, Winston & Strawn LLP

Renee T. Wilkerson, Winston & Strawn LLP

Robine Grant, Winston & Strawn LLP

William Greg Fox, Jr., Winston & Strawn LLP

Christopher Farellam, Epstein Becker & Green, PC

Edward John Steren, Epstein Becker & Green

George B. Breen, Epstein Becker & Green

Grant K. Schmidt, Epstein Becker & Green

Jack Wesley Hill, Ward, Smith & Hill PLLC

James Travis Underwood, Gillam & Smith LLP

Roger Brian Craft, Findlay Craft PC

### 5. **<u>Movant-Appellant</u>**

Loren Adler

### 6. **<u>Counsel for Movant-Appellant</u>**

Craig L. Briskin, Public Justice

Leah Nicholls, Public Justice

Ellen Noble, Public Justice

Martin Darren Woodward, Kitner Woodward PLLC


Date:  January 18, 2023

/s/ Ellen Noble
Ellen Noble
PUBLIC JUSTICE
*Counsel for Movant-Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for Appellant-Movant Loren Adler respectfully requests oral argument. This appeal raises questions of first impression in the Fifth Circuit that will determine whether the public can vindicate its common law and First Amendment rights to access court records. Oral argument would assist the Court in navigating these legal issues of great importance.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT ................................ v

TABLE OF AUTHORITIES...............................................................viii

INTRODUCTION.................................................................................. 1

JURISDICTION ................................................................................... 4

STATEMENT OF ISSUES................................................................... 6

STATEMENT OF THE CASE .............................................................. 6

SUMMARY OF ARGUMENT ............................................................. 16

STANDARD OF REVIEW................................................................... 19

ARGUMENT ...................................................................................... 20

    I.    The District Court Erred in Denying the Motion to Intervene for Lack of Article III Standing............................ 20

        A.    Adler does not need Article III standing to intervene for the limited purpose of challenging sealing orders. ......................................................... 21

            1.    The district court has inherent power to unseal its court records...................................... 21

            2.    The district court erred in requiring Article III standing regardless of the relief Adler seeks. ................................................................. 24

        B.    Adler has Article III standing to intervene to challenge the court's sealing orders............................ 30

    II.    Adler Satisfies the Rule 24(b) Standard for Permissive Intervention........................................................................ 37

    III.    Adler's Motion to Intervene Was Timely. ............................ 41

        A.    Motions to intervene to unseal court records are timely even long after a case closes. ........................... 42

    B.    The district court erred in applying the
           *Stallworth* factors ........................................................ 45

CONCLUSION ..................................................................... 55

CERTIFICATE OF SERVICE ..........................................…...56

CERTIFICATE OF COMPLIANCE ……................................57

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam Joseph Res. v. CNA Metals Ltd.*,
919 F.3d 856 (5th Cir. 2019)..........................................................19, 20

*Bradley ex rel. AJW v. Ackal*,
954 F.3d 216 (5th Cir. 2020)..........................................................23, 43

*Allen-Pieroni v. White*,
694 F. App'x 339 (5th Cir. 2017)....................................................25, 26

*Bechuck v. Home Depot U.S.A., Inc.*,
814 F.3d 287 (5th Cir. 2016).................................................................22

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir. 1992)...............................................29, 39, 44

*In re Beef Indus. Antitrust Litig.*,
589 F.2d 786 (5th Cir. 1979).................................................................38

*Binh Hoa Le v. Exeter Fin. Corp.*,
990 F.3d 410 (5th Cir. 2021).......................................................*passim*

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*,
712 F.3d 1349 (9th Cir. 2013)...............................................................44

*Bond v. Utreras*,
585 F.3d 1061 (7th Cir. 2009)........................................................22, 26

*Brown v. Advantage Eng'g, Inc.*,
960 F.2d 1013 (11th Cir. 1992).............................................................43

*Carlson v. United States*,
837 F.3d 753 (7th Cir. 2016)..................................................................32

*Cunningham v. Rolfe*,
131 F.R.D. 587 (D. Kan. 1990)..............................................................35

*Davis v. E. Baton Rouge Par. Sch. Bd.*,
  78 F.3d 920 (5th Cir. 1996) ............................................................ 5, 31

*Deus v. Allstate Insurance Co.*,
  15 F.3d 506 (5th Cir. 1994) ...................................................... *passim*

*Doe v. Pub. Citizen*,
  749 F.3d 246 (4th Cir. 2014) .............................................................. 32

*EEOC v. Nat'l Children's Ctr., Inc.*,
  146 F.3d 1042 (D.C. Cir. 1998) ............................................ 29, 38, 43

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
  229 F.R.D. 126 (S.D. Tex. 2005) ........................................................ 39

*In re Estelle*,
  516 F.2d 480 (5th Cir. 1975) .............................................................. 40

*FDIC v. Ernst & Ernst*,
  677 F.2d 230 (2d Cir. 1982) ............................................................... 44

*Flynt v. Lombardi*,
  782 F.3d 963 (8th Cir. 2015) ....................................................... 29, 39

*Ford v. City of Huntsville*,
  242 F.3d 235 (5th Cir. 2001) ......................................... 31, 50, 51, 53

*Gambale v. Deutsche Bank AG*,
  377 F.3d 133 (2d Cir. 2004) ............................................................... 23

*Geraci v. Doe*,
  2020 WL 5899114 (N.D. Tex. Oct. 5, 2020) ....................................... 23

*Globe Newspaper Co. v. Super. Ct. for Norfolk Cty.*,
  457 U.S. 596 (1982) .................................................................... 36, 41

*Jessup v. Luther*,
  227 F.3d 993 (7th Cir. 2000) .............................................................. 39

*In re Lease Oil Antitrust Litig.*,
  570 F.3d 244 (5th Cir. 2009) .............................................................. 54

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) .......................................................................... 30

*Macias v. Aaron Rents, Inc.,*
  288 F. App'x 913 (5th Cir. 2008) ................................................ 22, 23

*Moss v. Princip,*
  913 F.3d 508 (5th Cir. 2019) ............................................................ 19

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare,*
  781 F.3d 182 (5th Cir. 2015) ............................................................ 47

*Newby v. Enron Corp.,*
  443 F.3d 416 (5th Cir. 2006) ..................................................... *passim*

*Newman v. Graddick,*
  696 F.2d 796 (11th Cir. 1983) .......................................................... 32

*Nixon v. Warner Commc'ns, Inc.,*
  435 U.S. 589 (1978) .......................................................................... 22

*Olympic Refining Co. v. Carter,*
  332 F.2d 260 (9th Cir. 1964) ............................................................ 44

*Pansy v. Borough of Stroudsburg,*
  23 F.3d 772 (3d Cir. 1994) ............................................. 29, 39, 44, 45

*Parson v. Farley,*
  352 F. Supp. 3d 1141 (N.D. Okla. 2018) .......................................... 32

*Pub. Citizen v. Liggett Grp., Inc.,*
  858 F.2d 775 (1st Cir. 1988) ..................................................... *passim*

*Ruiz v. Estelle,*
  161 F.3d 814 (5th Cir. 1998) ................................................ 24, 27, 28

*SanMedica Int'l v. Amazon.com Inc.,*
  2015 WL 6680222 (D. Utah Nov. 2, 2015) ....................................... 32

*SEC v. Van Waeyenberghe,*
  990 F.2d 845 (5th Cir. 1993) ..................................................... 22, 30

*Sierra Club v. Espy,*
  18 F.3d 1202 (5th Cir. 1994) ............................................................ 46

*Stallworth v. Monsanto Co.,*
  558 F.2d 257 (5th Cir. 1977) ..................................................... *passim*

*Turner v. Cincinnati Ins. Co.,*
  9 F.4th 300 (5th Cir. 2021) ................................................................. 5

*United Nuclear Corp. v. Cranford Ins. Co.,*
  905 F.2d 1424 (10th Cir. 1990) ................................................... 43, 44

*United States v. Aldawsari,*
  683 F.3d 660 (5th Cir. 2012) ............................................................ 31

*United States v. Chagra,*
  701 F.2d 354 (5th Cir. 1983) ............................................................ 31

*United States v. Chambliss,*
  948 F.3d 691 (5th Cir. 2020) ............................................................ 20

*United States v. Holy Land Found. for Relief & Dev.,*
  624 F.3d 685 (5th Cir. 2010) .............................................................. 9

*United States v. Sealed Search Warrants,*
  868 F.3d 385 (5th Cir. 2017) .............................................................. 9

*United States v. U.S. Steel Corp.,*
  548 F.2d 1232 (5th Cir. 1977) .......................................................... 42

*Warth v. Seldin,*
  422 U.S. 490 (1975) .......................................................................... 30

*Williams v. Parker,*
  843 F.3d 617 (5th Cir. 2016) ............................................................ 30

*Zimmerman v. City of Austin, Tx.,*
  969 F.3d 564 (5th Cir. 2020) ...................................................... 21, 22

**Statutes**

28 U.S.C. § 1291 ................................................................................. 5

28 U.S.C. § 1331 ........................................................................ 4

28 U.S.C. § 1367(a) ................................................................... 4

31 U.S.C. § 3729 ............................................................... 4, 5, 6

## Other Authorities

13 Charles Alan Wright & Arthur R. Miller, Federal Practice
    and Procedure § 3523.2 (3d ed. 2020)................................ 21

Fed. R. App. P. 4(a)(1)(A) ....................................................... 5

Fed. R. Civ. P. 24(b).......................................................... *passim*

First Amendment ............................................................. *passim*

**INTRODUCTION**

The Fifth Circuit has long defended the public's right to access court records, recognizing it as "fundamental to English common law." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418 (5th Cir. 2021). Before judges may seal a court record, they "must undertake a case-by-case, 'document-by-document,' 'line-by-line' balancing of 'the public's common law right of access against the interests favoring nondisclosure,'" and "articulate any reasons" for sealing with "a level of detail that will allow for this Court's review." *Id.* at 419. Anything else is an abuse of discretion. *Id.* This Court has also explicitly warned against "extending protective-order standards to material filed with the court" and sealing "without any showing that secrecy is warranted." *Id.* at 421. Such excessive secrecy, this Court has said, "undercuts the public's right of access and thus undermines the public's faith in our justice system." *Id.*

Yet that is precisely what happened in this case. The parties filed boilerplate, unopposed motions to seal any document, or information from any document, that was marked confidential pursuant to the protective order. The court granted each motion in a perfunctory order

without articulating any reasons for sealing, much less balancing those reasons against the public's right of access. There are hundreds of documents sealed in the district court record, and the parties' briefing, the operative complaint, and even the court's order deciding dispositive motions are heavily redacted.

The question presented in this appeal is: What can a member of the public, who is unlawfully denied access to court records in violation of their common law and First Amendment rights, do about it? This Court and every other circuit to address the issue has held that a third party may intervene under Rule 24 to challenge unlawful sealing orders. But the district court decision denying appellant Loren Adler's motion to intervene erected a series of new barriers to challenging unlawful sealing determinations, which effectively eviscerate the public right of access. A right of access, without any means of enforcing that right, is not much of a right at all.

The district court first held that Adler must establish Article III standing because the case has settled, but that Adler cannot establish Article III standing because a motion to unseal the court record is not a justiciable controversy or claim. By that logic, no third party can

challenge sealing orders after a case is closed, no matter the circumstances. But that logic is flawed. Intervenors need not establish Article III standing because courts have continuous, inherent power to manage—and unseal—their own records. And although it is not necessary, Adler also has Article III standing because he has alleged that he is being denied access to the court record in violation of his common law and First Amendment rights, impeding his scholarly research and writing.

The district court also held that a request to unseal court records does not constitute a "claim" under the Rule 24 standard for permissive intervention, regardless of when the request is filed. This argument, if accepted, would foreclose Rule 24 intervention to unseal court records for everyone except parties that had a legal claim on the merits against the defendant. This would foreclose newspaper reporters, academics, and concerned citizens from ever having a mechanism to vindicate their public right of access to court records. This argument is also in direct conflict with Fifth Circuit case law, the law of every other circuit to decide the issue, and Supreme Court precedent.

The district court decision throws up one final hurdle: timeliness. The court reasoned that Adler should have intervened when the court entered the protective order in the case or began entering sealing orders. Because he didn't, the public's right of access is, according to the district court's analysis, forfeited forever. But the district court's analysis relies on cases denying motions to intervene on the merits of a case. The district court failed to recognize that motions to intervene on collateral issues, like sealing, are routinely granted after a case ends. Such motions do not prejudice the adjudication of the original parties' rights and are necessary to vindicate the public's continuing right of access to court records.

## JURISDICTION

The district court had subject matter jurisdiction over the underlying action pursuant to 28 U.S.C. § 1331 because the action raised a federal question under the False Claims Act, 31 U.S.C. § 3729 *et seq.* ROA.3146. The district court had supplemental jurisdiction over the analogous state law claims pursuant to 28 U.S.C. § 1367(a). ROA.3146. In an order dated June 25, 2021, the district court dismissed

the False Claims Act and analogous state law claims subject to the terms of the parties' settlement agreement. ROA.2924.

On December 14, 2021, Loren Adler moved to intervene in the case for the limited purpose of seeking public access to records sealed in this matter. ROA.2925-2937. He also filed a corresponding motion to unseal. ROA.2940-2955. On September 28, 2022, the district court entered a final order denying Adler's motion to intervene and motion to unseal. ROA.3093-3103. Adler timely filed a notice of appeal from the district court's final order on October 24, 2022. ROA.3104-3105; Fed. R. App. P. 4(a)(1)(A).

The district court's order is an appealable collateral order under 28 U.S.C. § 1291. *See Newby v. Enron Corp.*, 443 F.3d 416, 420 (5th Cir. 2006); *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 926 (5th Cir. 1996); *see also Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 308 (5th Cir. 2021) (stating this Court has "'provisional jurisdiction' to review a district court's order denying permissive intervention"); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977) (same).

## STATEMENT OF ISSUES

1. Whether Adler need establish Article III standing to intervene for the limited purpose of moving to unseal court records, and, if so, whether he has done so here.

2. Whether Adler satisfies the Rule 24(b)(1) standard for permissive intervention.

3. Whether the district court abused its discretion in denying Adler's motion to intervene as untimely.

## STATEMENT OF THE CASE

This case is about whether economist Loren Adler may intervene in a settled case for the limited purpose of challenging sealing orders that violate the public's common law and First Amendment rights to access court records.

**The Underlying Case**

Relators Caleb Hernandez and Jason Whaley, former employees of TeamHealth,[1] brought this action on April 25, 2016, under the qui tam provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and

---

[1] Movant refers to the Defendants in this case, collectively, as "TeamHealth."

analogous state laws. ROA.3146. TeamHealth is an emergency room management company that operates hospital emergency departments across the nation. ROA.3146. The company provides staffing, operation, and billing services to emergency departments as an outside contractor, promising to increase efficiency and profitability in exchange for a share of the emergency departments' earnings. ROA.3146.

The former TeamHealth employees alleged that TeamHealth defrauded the federal government, stealing tens of millions of dollars from publicly funded healthcare programs like Medicare and Medicaid. ROA.3146-3147, 3160. The complaint alleges that defendants would routinely bill for doctor examinations, when, in fact, no doctor had examined or treated the patient, ROA.3147-3149, and would also bill for "critical care"—the highest level of emergency treatment reserved for life-threatening situations—when, in fact, critical care services were not rendered or were not medically necessary, ROA.3154. This practice of misrepresenting the care provided so that the health care provider can receive a higher amount of compensation is known as "upcoding." According to the former employees, "TeamHealth has been upcoding routinely for critical care since at least 2006 within its emergency

departments across the nation, and continues to do so today."
ROA.3214.

This case was litigated up until the eve of trial. The court decided
various dispositive motions including TeamHealth's motion to dismiss
and motion for summary judgment, as well as motions to compel,
motions to exclude expert testimony, and numerous motions in limine.
ROA.2855-2864.

On June 21, 2021, shortly before trial was set to begin, the parties
settled the case. In the settlement agreement, TeamHealth paid a total
of $48 million to the United States and Relators. ROA.2960. The
agreement does not, however, provide for any changes to TeamHealth's
billing practices. ROA.2956-2972.

Pursuant to the parties' stipulation of dismissal, the district court
dismissed Relators' claims, but expressly "retain[ed] jurisdiction for the
purpose of enforcing the settlement agreement between the parties."
ROA.2924.

**Improper Sealing of Court Records**

The law governing the sealing of court records is well-established
in the Fifth Circuit. Courts should only seal court records "sparingly,"

based on particularized findings that that the need for secrecy outweighs the public's presumptive right of access. *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010). The public's right of access to judicial records, arising from the First Amendment and common law, "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness.'" *United States v. Sealed Search Warrants*, 868 F.3d 385, 390 n.1, 394 (5th Cir. 2017).

To protect the public's right of access, the Fifth Circuit requires that "judges, not litigants" undertake a "case-by-case, 'document by document,' 'line-by-line' balancing of 'the public's common law right of access against the interests favoring nondisclosure." *Binh Hoa Le*, 990 F.3d at 419. A court must articulate its findings at "a level of detail that will allow for this Court's review." *Id.* (quoting *Sealed Search Warrants*, 868 F.3d at 397). A court abuses its discretion if it "fails to 'articulate any reasons that would support sealing.'" *Id.* (quoting *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993)).

9

The Fifth Circuit has also made it clear that confidentiality under a protective order does not justify—and should not translate to—sealing the court record. While protective orders govern the exchange of discovery, "at the *adjudicative* stage, when materials enter the court record, the standard for shielding records from public view is far more arduous." *Id.* at 420. "This conflation error—equating the standard for keeping unfiled discovery confidential with the standard for placing filed materials under seal—is a common one and one that over-privileges secrecy and devalues transparency." *Id.*

Contrary to the law of this Circuit, the district court permitted this case to be litigated in a cloud of secrecy without making the requisite findings or articulating any reason for sealing. At the beginning of discovery on July 9, 2019, the court entered a stipulated protective order, allowing the parties to restrict the disclosure of information exchanged in discovery that contained trade secrets or other competitively sensitive information. ROA.932-942. TeamHealth proceeded to designate all documents it produced as confidential or highly confidential. ROA.4131.

Relying on those confidentiality designations, the parties filed boilerplate motions to seal nearly every document accompanying their filings, including dispositive motions, without any showing of why those documents should be hidden from the public. The court, in turn, routinely issued short sealing orders with no findings of fact about why the documents should be sealed. The sealing orders merely state, with slight wording variations, that "having considered the Motion to Seal and its unopposed nature, the Court is of the opinion that [it] should be and hereby is granted."[2] Accordingly, anything TeamHealth unilaterally marked confidential (which was everything) was then sealed on the court record.

To illustrate the extent of the sealing, TeamHealth's motion for summary judgment includes 36 exhibits that are "Redacted in Full," ROA.3419-3515, and the brief itself is heavily redacted, ROA.3365-3416. Relators' opposition to summary judgment contains 160 exhibits

---

[2]    *See*    ROA.1759-1760,    ROA.1765-1766,    ROA.1839-1840, ROA.1858-1859, ROA.1970, ROA.2194-95, ROA.2241-2241, ROA.2285-2295, ROA.2534-2535, ROA.2536-2537, ROA.2573, ROA.2578-2579, ROA.2590,    ROA.2591,    ROA.2615-2616,    ROA.2623,    ROA.2628, ROA.2650-2651, ROA.2660, ROA.2667, ROA.2680-2681, ROA.2695-2696, ROA.2797-2798, ROA.2805-2806, ROA.2826-2827, ROA.2828, ROA.2847-2848, ROA.2849-2850, ROA.2869-2870, ROA.2906-2907.

and all but seven are completely sealed. ROA.3657-3731. That opposition brief is also heavily redacted. ROA.3605-3656. So, too, is the operative complaint. ROA.3145-3267. Even in the court's order deciding the motion for summary judgment and other important matters, Relators' allegations of fraud are almost entirely redacted. ROA.4326-4359.

As the trial date approached, Relators did try to challenge TeamHealth's abuse of the protective order. Relators challenged TeamHealth's confidentiality designations of 44 documents. ROA.4126. TeamHealth then moved for protection of those confidentiality designations in motions that were filed entirely under seal. ROA.53, 61. According to Relators, TeamHealth blanket-designated every page of every document they produced in discovery as confidential without making any independent showing of good cause, including letters that TeamHealth had represented as "public disclosures." ROA.4130. Relators argued that TeamHealth has failed to show good cause and has failed to overcome the strong presumption in favor of the public's common law right of access to court records. ROA.4126-4146.

From the bench, the district court granted TeamHealth's motions for protection of its confidentiality designations without making any findings regarding the accuracy of those designations and without stating any reasons for sealing. In an order codifying its decision, the court noted only that "the designation of the disputed documents as confidential would not necessarily preclude their use in an open trial, but [it] sees no basis to strike the confidential designations at this time." ROA.2683.

After the parties settled and the court dismissed Relators' claims on July 25, 2021, the court never revisited its sealing orders. ROA.77. The parties' briefs, hundreds of exhibits, the operative complaint, and even the final pretrial court order remained sealed or heavily redacted without any justification.

**Adler's Motion to Intervene**

Less than six months after the settlement, Loren Adler moved to intervene for the limited purpose of challenging the court's sealing orders. ROA.2925-2937. He also filed a corresponding motion to unseal documents. ROA.2940-2955. Loren Adler is an economist and Associate Director of the USC-Brookings Schaeffer Initiative for Health Policy,

where he focuses on a range of topics related to health care economics and policy, including insurance markets, provider payment, prescription drugs, Medicare, and Medicaid. ROA.2977. He regularly publishes and presents his original research in published academic journals and blog posts. ROA.2977

Adler has a particular and demonstrated interest in the impact that private equity-owned companies like TeamHealth have on the cost and quality of care in Medicare. ROA.2978-79. In October 2021, he co-authored a paper entitled, "Private equity investment as a diving rod for market failure: Policy responses to harmful physician practice acquisitions," which is about whether the involvement of private equity-owned companies, including TeamHealth, would increase costs and lower health care quality. ROA.2979. He is currently researching "the effects that private equity ownership of physician practices might have on care quality and utilization in the Medicare program, as well as prices in commercial insurance markets." ROA.2979.

Not only does Adler write about these issues, but he helps craft public policy solutions. He has presented to the U.S. Senate Committee on Health, Education, Labor, and Pensions recommendations on how to

reduce the cost of Medicare and build on the Trump Administration's efforts to equalize Medicare payment for the same services being delivered at different sites of care. ROA.2978. Adler thus educates and actively participates in the public discourse—the "marketplace of ideas"—regarding the economics of health care in America.

Adler moved to intervene pursuant to Federal Rule 24(b)(1) for the limited purpose of seeking public access to the sealed court record in accordance with his common law and First Amendment rights. ROA.2926. He filed an accompanying declaration explaining that the court records, particularly those concerning TeamHealth's billing practices in the context of Medicare and Medicaid, would be highly informative to his research and future published work, and that he is not aware of any other available source for this information. ROA.2979. Adler also seeks to represent the public's right of access, explaining that he believes the records are of public interest because they pertain to the cost of medical care in the United States. ROA.2979. With access to the court record, Adler contends "we can all be better informed about how health care billing works and how it can be improved." ROA.2979.

TeamHealth opposed Adler's motion to intervene, arguing that it was untimely, that Adler lacked Article III standing, and that the other requirements for Rule 24(b) were not satisfied. ROA.3017-3028. TeamHealth also opposed the motion to unseal. ROA.3005-3013. The United States did not take a position on Adler's motions except that it opposed the motion to unseal to the extent it could be construed to seek unsealing of the United States' pre-intervention pleadings. ROA.2998-3000. Adler confirmed that he does not seek to unseal any of the United States' pre-intervention pleadings. ROA.3000.

The district court denied Adler's motion to intervene on the grounds that Adler lacks Article III standing, that Adler's request to unseal court records is not a "claim" under Rule 24(b)(1), and that his intervention was untimely. The court then denied the motion to unseal as moot, leaving hundreds of court records sealed without any justification. ROA.3103.

Adler appeals.

## SUMMARY OF ARGUMENT

This Court should reverse the district court decision and grant Adler's motion to intervene to ensure the public has a means of

vindicating their common law and First Amendment rights of access to court records. The district court decision denied Adler's motion to intervene on three grounds, but each reflects the same mistake: The district court tried to assess the motion to intervene without considering the actual relief Adler seeks, the unsealing of court records. As a result, the court erroneously relied on case law governing motions to intervene on the merits of an underlying action without recognizing that the collateral nature of the relief Adler seeks alters the legal analysis. The court also misconstrued Fifth Circuit case law and overlooked how the logic of its holding, if adopted, would make it impossible for the public to enforce its common law and First Amendment rights of access.

**I.** Contrary to the decision below, Adler does not need Article III standing to intervene for the limited purpose of challenging sealing orders. In this Circuit, an intervenor need not establish Article III standing where the court already has jurisdiction to grant the requested relief. And, here, the district court already has jurisdiction—an "inherent supervisory power"—to unseal its records, regardless of whether there is a live case or controversy.

17

Nonetheless, Adler *does* have Article III standing because he has been denied access to court records that he has a common law and constitutional right to access, and which has in turn, impeded his research and writing on an issue of professional interest and public importance.

**II.** Adler also satisfies Rule 24(b)'s standard for permissive intervention. By challenging the court's sealing orders in the main action, Adler's claims necessarily share common questions of law and fact with the main action. The district court's argument that a motion to unseal court records does not constitute a "claim" under Rule 24(b) would shut the door on third-party intervention to unseal court records, overturning decades of precedent and rendering the public's right of access unenforceable.

**III.** Finally, Adler's motion to intervene was timely. The district court failed to recognize that a motion to intervene to unseal court records does not raise the same timeliness concerns as a motion to intervene on the merits. Courts may grant motions to intervene to unseal court records long after a case closes because the public's right of access does not die with a case and intervention regarding such a

collateral issue does not disrupt or prejudice the adjudication of the original parties' rights.

But even under the usual timeliness framework, Adler's motion is timely because he promptly intervened as soon as it became clear that neither the parties nor the judge would safeguard the public's right of access. Defendants are not prejudiced by any purported delay, and, without intervention, Adler and the public will be permanently denied access, in violation of their common law and First Amendment rights, without ever having an opportunity to be heard on the matter.

## STANDARD OF REVIEW

The Court reviews "the district court's subject matter jurisdiction *de novo* as a matter of law." *Moss v. Princip*, 913 F.3d 508, 513 (5th Cir. 2019). Thus, whether the district court properly denied the motion to intervene on the grounds that Adler lacks Article III standing—a question of subject matter jurisdiction—is reviewed de novo.

The Court reviews a decision to deny a motion to intervene for abuse of discretion except to the extent that the decision was based on a question of law, in which case the standard of review is de novo. *See Stallworth*, 558 F.2d at 269; *see also Adam Joseph Res. v. CNA Metals*

*Ltd.*, 919 F.3d 856, 868 (5th Cir. 2019) (explaining a court's "*interpretation*" of a federal rule is reviewed de novo while its "*application*" of the rule is reviewed for abuse of discretion). A district court abuses its discretion when it "bases its decision on an error of law or a clearly erroneous assessment of the evidence." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *see also Adam*, 919 F.3d at 868.

## ARGUMENT

### I. The District Court Erred in Denying the Motion to Intervene for Lack of Article III Standing.

The district denied the motion to intervene on the grounds that Adler lacked Article III standing. But Adler does not need Article III standing to intervene for the limited purpose of moving to unseal court records. And even if he did, Adler has Article III standing because the sealing orders deny him access to court records that he has a common law and First Amendment right to access, impeding his scholarly work and limiting his understanding of an important public policy issue.

**A.    Adler does not need Article III standing to intervene for the limited purpose of challenging sealing orders.**

    **1.    The district court has inherent power to unseal its court records.**

Adler does not need Article III standing to intervene because he seeks relief, the unsealing of court records, that is within the court's inherent authority. "A federal district court may hear a *case* only if it falls within the judicial power of Article III of the Constitution and a statutory grant of subject matter jurisdiction." 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3523.2 (3d ed. 2020) (emphasis added). "But sometimes the federal courts are permitted to entertain a *claim* or an *incidental proceeding* that does *not* satisfy requirements of an independent basis of subject matter jurisdiction." *Id.*

The Fifth Circuit has held that "even if a court loses jurisdiction over the litigation, it maintains its 'inherent supervisory powers.'" *Zimmerman v. City of Austin, Tx.*, 969 F.3d 564, 569 (5th Cir. 2020). Courts, including this Court, have sometimes referred to these inherent powers as a type of "ancillary jurisdiction." *E.g.*, *id.* at 567-69. These inherent powers include the court's power "to manage its proceedings,

vindicate its authority, and effectuate its decrees," which "extends to 'collateral issues,' things like fees, costs, contempt, and sanctions." *Id.* at 568.

A court's inherent power to manage its proceedings also extends to managing access to the court record. As the Supreme Court has held, "[e]very court has supervisory power over its own records and files." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *Van Waeyenberghe*, 990 F.2d at 848 (same); *see also Macias v. Aaron Rents, Inc.*, 288 F. App'x 913, 915 (5th Cir. 2008) (comparing court's supervisory power over public access to the court's files with court's supervisory power over attorney's fees); *Bond v. Utreras*, 585 F.3d 1061, 1079 (7th Cir. 2009) (recognizing "a court may have inherent authority"—or "ancillary jurisdiction"—"to modify a protective order sealing documents maintained in the court file").

The district court's inherent power to manage access to its docket does not end when a case is closed. "It is well established that a federal court may consider collateral issues after an action is no longer pending[.]" *Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 291 (5th Cir. 2016) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395

(1990)). This includes the unsealing of court records. *See Macias*, 288 F. App'x at 915 ("[A] motion relating to access to the court's files can be considered long after the merits of the underlying litigation have been resolved."); *Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 224 (5th Cir. 2020) (holding that sealing is a collateral issue that a district court can consider well after the action is no longer pending) (citing *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 141-42 (2d Cir. 2004)).[3] "This retained power in the court to alter its own ongoing directives provides a safety valve for public interest concerns, changed circumstances or any other basis that may reasonably be offered for later adjustment." *Gambale*, 377 F.3d at 141 (quoting *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993)).

Because the district court has inherent power to unseal its own court records, no showing of Article III standing is necessary to intervene for the limited purpose of moving to unseal court records. Article III standing requirements exist "to guarantee the existence of a

---

[3] *See also Geraci v. Doe*, 2020 WL 5899114, at *2 (N.D. Tex. Oct. 5, 2020) (citing *Bradley*) ("That the court loses jurisdiction over the litigation does not, however, deprive the district court of its inherent supervisory power . . . to unseal or seal its records even after a case has been dismissed.").

'case' or 'controversy' appropriate for judicial determination," ensuring the court does not overstep its jurisdiction. *Ruiz v. Estelle*, 161 F.3d 814, 832 (5th Cir. 1998), *abrogated on other grounds by Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433 (2017). But Adler is not asking the court to decide a case or controversy—only a collateral issue, and the court already has jurisdiction to decide that issue. Thus, Adler need not satisfy Article III standing requirements to intervene for the limited purpose of challenging the court's sealing orders.

### 2. The district court erred in requiring Article III standing regardless of the relief Adler seeks.

The district court holding—that Adler must have Article III standing to intervene in a closed case, even if he only seeks to litigate a collateral issue—is based on a mistaken interpretation of Fifth Circuit case law. The district court insisted that whether document unsealing is a collateral issue or not, Adler must first establish "Article III standing to intervene in a closed case." ROA.3096-3097. The court relied on a sentence in *Newby* where the Court wrote: "in the absence of a live controversy in a pending case, an intervenor would need standing to intervene." 443 F.3d at 422.

But that language is dicta from a case that did not involve intervention for the purpose of unsealing the court record. The underlying case in *Newby* was still pending, so the court did not have to determine whether an intervenor in a closed case would need to establish Article III standing, nor was that issue briefed by the parties. *See id.* at 422. *Newby* is also inapposite because the movants there did not seek intervention for the purpose of unsealing the court record; they only sought to modify a protective order so that they could access discovery material that was never filed on the court record. *See id.* at 417 (noting intervention was "for the purpose of accessing discovery protected by court order"). As explained, the law governing confidentiality of discovery material is not to be conflated with the law governing the sealing of court records. *See Binh Hoa Le*, 990 F.3d at 420. Thus, *Newby* did not implicate the court's inherent and continuous power to unseal its records or its duty to safeguard the public right of access that is at issue here.[4]

---

[4] The unpublished, per curiam decision in *Allen-Pieroni v. White*, 694 F. App'x 339, 340 (5th Cir. 2017), likewise did not involve a motion to intervene for the purpose of unsealing the court record—only to gain access to discovery materials. Indeed, the Court in *Allen-Pieroni* cited

Nor does the case *Newby* cites, *Deus v. Allstate Insurance Co.*, 15 F.3d 506 (5th Cir. 1994), stand for the proposition that an intervenor must always have Article III standing to intervene in a closed case, even when the intervenor only seeks to litigate a collateral issue like unsealing. In fact, *Deus* says nothing at all about whether an intervenor must establish Article III standing. The intervenors in *Deus* never argued that they do not need standing. *See* Brief of Appellants, *Deus v. Allstate Ins. Co.*, 15 F.3d 506 (5th Cir. 1994) (No. 92-4795), 1992 WL 12128687. And the court never interrogated the issue; it simply assumed standing was required. *Deus*, 15 F.3d at 525-26. The words "Article III" do not appear anywhere in the decision.

Six years after *Deus*, the Fifth Circuit *did* address the question of when an intervenor needs Article III standing. Siding with the Second, Ninth, and Eleventh Circuits, the Fifth Circuit held that intervenors do

---

*Bond v. Utreras*, where the Seventh Circuit explicitly recognized that "a court may have inherent authority to modify a protective order sealing documents maintained in the court file" but "that's not what's at issue here" because the challenged protective order "did not operate to shield the court's own records from public view." *Bond*, 585 F.3d at 1079; *see Allen-Pieroni*, 694 F. App'x at 340. At any rate, *Allen-Pieroni* is non-precedential. *See* 694 F. App'x at 339 n.* ("Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent . . . .").

not need to establish Article III standing where, as here, the Court already has jurisdiction to provide the intervenors' requested relief. *See Ruiz*, 161 F.3d at 833. In *Ruiz*, Texas legislators moved to intervene for the purpose of moving to vacate the court's judgement. 161 F.3d at 816-817. In other words, the legislators sought to intervene for the purpose of seeking relief *on the merits* of the underlying case. The Court held that the intervenors did not need to independently possess standing because they were intervening in "a subsisting and continuing Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so." *Id.* at 830. Because the court *already had jurisdiction* to grant the relief that the intervenors were seeking, the intervenors did not need to satisfy Article III standing. Article III standing was required for the purpose of ensuring that the court was ultimately acting within its jurisdiction; it was not something the parties, or movant, needed to independently establish. *Id.*

The same principle applies here. The district court already has inherent authority, or "ancillary jurisdiction," over its own case docket, so there is no need to require Adler to establish Article III standing to

intervene for the limited purpose of moving to unseal the court record. In this case, the district court's pre-existing jurisdiction is not based on an ongoing Article III case or controversy, but rather, on the court's inherent supervisory power over collateral issues like unsealing. But the underlying principle in *Ruiz*—that an intervenor need not establish Article III standing if the court already has jurisdiction over the issue— applies with equal force.

This principle in *Ruiz* (which the district court never cited) also puts the quote from *Newby* in context. It usually *is* true that an intervenor will need to establish Article III standing to intervene in a closed case because intervenors usually seek relief on the merits of a case. A court does not have jurisdiction to grant substantive relief on the merits unless there is an ongoing Article III case or controversy. Thus, the quote from *Newby* reflects the general rule.

But that general rule does not apply where, as here, the intervenor only seeks to unseal the court record. "Notwithstanding the general requirement of an independent jurisdictional basis, courts have crafted a narrow exception when the third party seeks to intervene for the limited purpose of obtaining access to documents protected by a

confidentiality order. The rationale for this exception is simple—such intervenors do not ask the district court to exercise jurisdiction over an additional claim on the merits, but rather to exercise a power that it already has . . . ." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1047 (D.C. Cir. 1998); *see also Flynt v. Lombardi*, 782 F.3d 963, 967 (8th Cir. 2015) (holding no independent jurisdictional basis needed to intervene to challenge sealing in closed case); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 n.3 (3d Cir. 1994) (same); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) (no independent jurisdictional basis needed to intervene to challenge protective order in closed case).[5]

---

[5] Even if a completely closed case somehow stripped the district court of any power to manage its docket, this case is not fully closed. This case is still pending because the district court has expressly stated that it "retains jurisdiction for the purpose of enforcing the settlement agreement between the parties." ROA.2924.

TeamHealth may argue that the court only retained jurisdiction to enforce the settlement, not adjudicate the merits of the case. But that argument only highlights the incoherence of its original argument. There is no reason why the Article III standing requirement for Adler would turn on whether the court retains jurisdiction over the merits of the case or over the enforcement of the settlement agreement. Adler does not seek relief related to either the merits or enforcement of the settlement agreement. He seeks relief related to the court record, which the court also retains jurisdiction over.

### B.    Adler has Article III standing to intervene to challenge the court's sealing orders.

Although it is not required, Adler has Article III standing to intervene to unseal court records, vindicating the public's right of access. For constitutional standing, a "plaintiff must have suffered an 'injury in fact'" that is "fairly . . . trace[able] to the challenged action" and that will "likely" be "redressed by a favorable decision*." Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury in fact is "a concrete and particularized invasion of a legally protected interest." *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016). So long as the injury in fact alleged by each intervenor is "a distinct and palpable injury to himself," standing should not be denied "even if it is an injury shared by a large class of other possible litigants." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Adler has standing to intervene because the district court's sealing orders denied him access to court records in violation of his common law and First Amendment rights. Adler has a "common law right to inspect and copy judicial records," *Van Waeyenberghe*, 990 F.2d at 848, as well

as a First Amendment right of access to court proceedings, *see United States v. Chagra*, 701 F.2d 354, 363 (5th Cir. 1983). The Fifth Circuit has held that a person has Article III standing to intervene and challenge court orders that deny them access to information to which they have a legal right. *See Davis*, 78 F.3d at 927 (holding that intervening news agencies had Article III standing to challenge confidentiality orders that "impede [their] abilities to gather the news" and "discover information about . . . a desegregation plan" in violation of their First Amendment rights); *United States v. Aldawsari*, 683 F.3d 660, 665 (5th Cir. 2012) (holding journalist had Article III standing to challenge confidentiality order because it "affected his right to gather news"). Thus, because Adler has alleged that he is being denied access to court records in violation of his longstanding common law and constitutional rights, Adler has standing to intervene.

The mere fact that Adler, as a member of the public, seeks and is being denied access to the court record is itself an Article III injury. To determine whether there is standing to intervene, the Court "need only find that the [order] being challenged presents an obstacle to the [intervenor's] attempt to obtain access." *Ford v. City of Huntsville*, 242

31

F.3d 235, 240 (5th Cir. 2001) (citing *Pansy*, 23 F.3d at 777). "[T]he right of access [to judicial records] is widely shared among the press and the general public alike, such that anyone who seeks and is denied access to judicial records sustains an injury." *Doe v. Pub. Citizen*, 749 F.3d 246, 263 (4th Cir. 2014); *see also Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 787 (1st Cir. 1988) (recognizing denial of access to court record is an injury in fact); *Carlson v. United States*, 837 F.3d 753, 757-58 (7th Cir. 2016) (same); *Newman v. Graddick*, 696 F.2d 796, 800 (11th Cir. 1983) (same).

The denial of access to the court record also hurts Adler in particular. Adler's work focuses on how private equity-owned companies like TeamHealth operate and bill Medicare and Medicaid programs. ROA.2978-2979. He believes the information sealed in this case would be helpful to his research and writing and cannot be found elsewhere. ROA.2979. This, too, constitutes an injury in fact. *See Parson v. Farley*, 352 F. Supp. 3d 1141, 1148 (N.D. Okla. 2018) (holding law professor had shown a concrete and particularized injury caused by the court's sealing order because it had deprived him of information he intended to study and disseminate on his blog); *SanMedica Int'l v. Amazon.com*

*Inc.*, No. 2:13-cv-00169, 2015 WL 6680222, at *3 (D. Utah Nov. 2, 2015) (recognizing professor's "interest in the redacted information . . . constitutes an injury in fact").

Finally, the denial of access, in violation of Adler's common law and First Amendment rights, impedes public understanding and discourse on a matter critical to the health and wellbeing of Americans. Adler explained that the cost of medical care in the United States is of high public interest, and that the denial of the information at issue prevents the public (himself included) from being better informed about how healthcare billing works and how it can be improved. ROA.2979.

This is precisely the type of harm that the common law and First Amendment rights of access are designed to redress. The right of access derives from the democratic principle that "sovereignty is wielded not by government but by the governed" and that "Americans cannot keep a watchful eye, either in capitols or in courthouses, if they are wearing blindfolds." *Binh Hoa Le*, 990 F.3d at 417. The court records at issue involve allegations of fraud in the operation of government programs and reveal how the legal system operated to resolve those allegations. Depriving the public of information that is important to understanding,

and seeking ways to fix, the high cost of healthcare in America is the very type of injury that the common law and First Amendment rights of access safeguard against.

In summary, the deprivation of access to court records denies Adler information in violation of his common law and First Amendment rights; harms his ability to effectively research and report on a matter of professional interest; and denies the public the opportunity to fully understand the high cost of healthcare in America and oversee government institutions. These injuries are caused by the district court's sealing orders and would be redressed by a favorable decision to unseal the court record. Thus, Adler has Article III standing to intervene for the limited purpose of challenging the court's sealing orders.

The district court's conclusion to the contrary was based on a single, out-of-context sentence in a case where the intervenors never asserted a common law or First Amendment right of access to the information. The district court's standing analysis rests on a quote from *Deus*, stating: "The desire to intervene to pursue the vacating of the protective order and/or the unsealing of the record is not a justiciable

controversy or claim, *absent some underlying right* creating standing for the movants." 15 F.3d at 525 (emphasis added).

*Deus* is inapposite because, unlike the intervenors in that case, Adler has asserted underlying rights: his common law and First Amendment rights of access to court records. The intervenors in *Deus* never alleged any common law or First Amendment right to access the records at issue. *See* Brief of Appellants, *Deus v. Allstate Ins. Co.*, 15 F.3d 506 (5th Cir. 1994) (No. 92-4795), 1992 WL 12128687. Accordingly, the court's decision never discusses the public's right of access. *See Deus*, 15 F.3d at 525. Instead, the court relied on *Cunningham v. Rolfe*, 131 F.R.D. 587 (D. Kan. 1990), where intervenors only sought access to discovery materials that were never filed on the court's docket and which therefore did not implicate the same public right of access to court records at issue here. *See id.* at 589. While the mere "desire" to vacate a protective order may not confer Article III standing, *Deus*, 15 F.3d at 525, Adler's allegation that he is being denied access to the court record in violation of his longstanding common law and constitutional rights of access, does establish Article III standing.

*Deus* is distinguishable on other grounds too. In *Deus*, the Court held that intervention is not appropriate because the intervenor "is already participating in a lawsuit against [the defendant] in federal court in Nevada" and could "protect any interest he has in these materials by filing a discovery request in that case." *Id.* at 526. By contrast, here, Adler has stated that he is "not aware of any other available source for this information." ROA.2979.

Applying *Deus* here and holding that Adler lacks Article III standing to intervene would conflict with Supreme Court precedent and effectively erase the public's common law and First Amendment rights of access to court records. The Supreme Court has explained that to preserve the public's right of access, "representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion'" from the proceedings or access to documents. *Globe Newspaper Co. v. Super. Ct. for Norfolk Cty.*, 457 U.S. 596, 609 n.25 (1982). This right of access has no expiration date—indeed, many members of the public may not have an interest in accessing particular court records until years or even decades after a

case has closed. Because the right of access is continuous, so, too, is the right to be heard on the denial of access.

If intervening to unseal the court record is not "a justiciable controversy or claim," *Deus*, 15 F.3d at 525, then there is no way for the public to enforce its common law and constitutional right of access. This would give lower courts license to seal large parts of the court record without any justification, just as the district court did below, and the public would have no avenue for recourse. This is inconsistent with this Court's recent admonition for courts and litigants to "zealously guard the public's right of access to judicial records." *Binh Hoa Le*, 990 F.3d at 421.

## II. Adler Satisfies the Rule 24(b) Standard for Permissive Intervention.

Adler satisfies the permissive intervention standard because his claim shares questions of law and fact with the main action and will not unduly delay or prejudice the adjudication of the original parties' rights. Rule 24(b)(1) permits anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "The determination is not discretionary; it is a question of law." *Newby*, 443 F.3d at 421. The court then "must

consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Starting with Rule 24(b)(1)(B)'s nexus requirement, the Fifth Circuit has already held that non-parties like Adler seeking to challenge a sealing order in the main action may intervene under Rule 24(b). *See In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 789 (5th Cir. 1979) (holding there is "no question that the procedurally correct course" for nonparties seeking access to sealed documents is through a motion to intervene). By challenging the court's sealing orders in the main action, Adler's claim necessarily shares common questions of law and fact with the main action. For example, in *Newby*, where the Texas State Board of Public Accountability intervened for the purpose of gaining access to discovery protected by court order, this Court held that the Board's claim for access shared "questions of fact and law in common with the [main action]" and satisfied Rule 24(b)(1)'s nexus requirement. 443 F.3d at 422.

In fact, all the circuits agree that a non-party seeking to access documents in a case, by challenging a sealing or protective order, necessarily satisfies the first prong of permissive intervention. *See Nat'l*

*Children's Ctr., Inc.*, 146 F.3d at 1045 (noting "every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders") (citing cases); *see also Flynt*, 782 F.3d at 967 (citing cases); *Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 229 F.R.D. 126, 130 (S.D. Tex. 2005). "By virtue of the fact that the [intervenors] challenge the validity of the Order . . . entered in the main action, they meet the requirement of [Rule 24(b)] that their claim must have a 'question of law or fact in common' with the main action." *Pansy*, 23 F.3d at 778. "Further specificity, *e.g.*, that the claim involve the same clause of the policy, or the same legal theory, is not required when intervenors are not becoming parties to the litigation." *Beckman Indus., Inc.*, 966 F.2d at 474.

The district court below wrongly determined that Adler's request to unseal documents is not a "claim" under Rule 24(b)(1)(B) and thus cannot share a common question of law or fact with the main action. ROA.3102. The court reasoned that Adler's request to unseal was not a "claim" because, per *Deus*, the desire to intervene to vacate a protective

order or unseal the record "is not a justiciable controversy or claim."
ROA.3102. This is the same argument that was made—and rejected—in
*Newby*. The Court in *Newby* explained that *Deus* was decided on the
grounds that the intervenors lacked Article III standing and did *not*
stand for the proposition that a party seeking to unseal or challenge a
protective order had no "claim" and therefore could never satisfy the
permissive intervention standard under Rule 24(b)(1). *See* 443 F.3d at
421-423.

The district court's narrow reading of a "claim" under Rule
24(b)(1) also conflicts with Supreme Court precedent. ROA.3102. "[T]he
Supreme Court has said that [Rule 24(b)(1)] 'plainly dispenses with any
requirement that the intervenor shall have a direct personal or
pecuniary interest in the subject of the litigation." *In re Estelle*, 516
F.2d 480, 485 (5th Cir. 1975) (quoting *SEC v. U.S. Realty &
Improvement Co.*, 310 U.S. 434, 459 (1940)). "[T]he intervenor-by-
permission does not even have to be a person who would have been a
proper party at the beginning of the suit[.]" *Id.* (quoting 7A Charles
Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1911
(1st ed. 1972)). Thus, there is no basis for the argument that an

intervenor must have a legal claim on the merits of a case, that itself creates a case or controversy, to satisfy the first prong of permissive intervention under Rule 24(b)(1). If this Court adopted such a requirement, it would be impossible for the public to intervene to unseal court records, stripping them of an "opportunity to be heard on the question of their exclusion" from the proceedings or access to documents. *Globe Newspaper Co.*, 457 U.S. at 609 n.25.

Finally, permitting Adler to intervene to move to unseal the documents would not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Not only does Adler seek relief collateral to the merits of the underlying action, but the parties already stipulated to a dismissal and settled the case. ROA.439. Thus, there could be no delay or prejudice to the adjudication of the original parties' rights.

## III. Adler's Motion to Intervene Was Timely.

Adler timely filed a motion to intervene to unseal the court records when it became apparent—six months after the case had settled—that the district court was not going to provide public access to the judicial records, which is "the duty and responsibility of the Judicial Branch."

41

*Binh Hoa Le*, 990 F.3d at 417. In denying Adler's motion as untimely, the district court did not conduct the proper timeliness analysis for motions to intervene for the sole purpose of gaining access to court records, and clearly erred in its application of the *Stallworth* factors.

### A. Motions to intervene to unseal court records are timely even long after a case closes.

As an initial matter, the district court erred in applying the *Stallworth* factors without considering the nature of Adler's motion to intervene. "[T]imeliness is not limited to chronological considerations, it 'is to be determined from all the circumstances.'" *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977) (quoting *NAACP v. New York*, 413 U.S. 345, 366 (1973)). The Fifth Circuit in *Stallworth* outlined certain factors that should be considered in assessing the timeliness of a motion to intervene *on the merits* of an underlying action. *See* 558 F.2d at 264. But the Fifth Circuit has never addressed how the timeliness analysis should be applied in cases where a party seeks to intervene solely for the purpose of gaining access to the court record.

Other circuits have drawn distinctions between timeliness determinations in matters where parties seek to intervene on the merits of the underlying case and where a third party seeks intervention only

to gain access to court records. Those circuits have recognized that "Rule 24(b)'s timeliness requirement is to prevent prejudice in the adjudication of the rights of the existing parties," which is "a concern not present when the existing parties have settled their dispute and intervention is for a collateral purpose." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *see Nat'l Children's Ctr., Inc.*, 146 F.3d at 1047 (same); *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1015-16 (11th Cir. 1992) (reversing and vacating district court order that denied motion to intervene to unseal, filed six months after dismissal, as untimely under *Stallworth* factors).

Motions to intervene to unseal court records are also unique because the public's right of access is continuous and exists long after a case closes. *See Bradley ex rel. AJW*, 954 F.3d at 224. "[T]o the extent [a right of access] exists, it exists today for the records of cases decided a hundred years ago as surely as is does for lawsuits now in the early stages of motions litigation. The fact that a suit has gone to judgment does not in any sense militate against the public's right to prosecute a substantiated right to see the records of a particular case." *Liggett Grp., Inc.*, 858 F.2d at 786 (alteration in original) (quoting *Mokhiber v. Davis*,

537 A.2d 1100, 1105 (D.C. 1988)). There is no time limit on the public's right of access, and members may decide to exercise their right to review court records for a host of different reasons, many of which may arise years after the records were first sealed.

In light of their unique nature, courts have routinely granted motions to intervene to challenge sealing or protective orders long after a case has closed, "many involving delays measured in years rather than weeks." *Id.* at 785; *see, e.g.*, *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1354 (9th Cir. 2013) (allowing intervention six years after case settled); *Pansy*, 23 F.3d at 780 (allowing intervention six and one-half month after case settled); *Beckman Indus., Inc.*, 966 F.2d at 473 (allowing intervention two years after case terminated); *United Nuclear Corp.*, 905 F.2d at 1427 (allowing intervention three years after case settled); *FDIC v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982) (allowing intervention two years after case settled); *Olympic Refining Co. v. Carter*, 332 F.2d 260, 265-66 (9th Cir. 1964) (allowing nonparty to seek access to discovery material three years after case was terminated). "[T]he growing consensus among the courts of appeals [is] that intervention to challenge confidentiality [or

sealing] orders may take place long after a case has been terminated." *Pansy*, 23 F.3d at 779.[6]

The district court erred in applying the *Stallworth* factors without considering the limited, collateral purpose of Adler's motion to intervene. Motions to intervene to unseal do not prejudice the adjudication of the rights of the existing parties and are necessary to enforce the public's continuous common law and First Amendment rights to access court records. Therefore, motions to intervene to unseal—unlike motions to intervene on the merits—are timely even when filed many years after a case has closed.

## B.    The district court erred in applying the *Stallworth* factors.

Not only did the district court fail to consider the nature of Adler's motion to intervene, but the district court also erred in its analysis of each *Stallworth* factor. The timeliness of an ordinary motion to

---

[6] Instead of discussing these cases where the intervenor sought to challenge a sealing or protective order, the district court relied on cases holding that motions to intervene *on the merits* of a case were untimely. *See* ROA.3100 (citing *United States v. Covington Cty. Sch. Dist.*, 499 F.3d 464, 465-66 (5th Cir. 2007); *Engra, Inc. v. Gabel*, 958 F.2d 643, 645 (5th Cir. 1992); *U.S. Steel Corp.*, 548 at 1235; and *Hill v. Gen. Motors LLC*, No. 7:14-cv-00064-O, 2015 WL 11117873, at *1 (N.D. Tex. Apr. 28, 2015)).

intervene in the merits of a case requires the consideration of four factors:

> (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (citing *Stallworth*, 558 F.2d at 264-66).

**1.** On the first factor, Adler promptly intervened as soon as it became clear that neither the parties nor the judge would safeguard the public's right of access. Contrary to the district court's analysis, the clock did not start ticking when the court first entered the protective order in July 2019 or sealing orders in June 2020. This Court has held, as a matter of law, that an intervenor's delay should be measured from the time that "she became aware that her interests 'would no longer be protected'" without intervening. *Stallworth*, 558 F.2d at 264 (quoting

*United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)); *see also Liggett Grp., Inc.*, 858 F.2d at 785.

It was not clear, until several months after the case settled, that neither the judge nor the parties would safeguard Adler's common law and First Amendment rights to access court records. Courts routinely unseal documents after a case settles, either because there are no longer concerns about prejudicing a jury prior to trial or because, as a practical matter, documents were (improperly) provisionally sealed pursuant to a protective order so as not to delay ongoing litigation. *See, e.g., N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 203-04 (5th Cir. 2015) (upholding district court's order unsealing court records, which was entered 48 days after the district court granted summary judgment). The district court had a "solemn duty to promote judicial transparency" independent of the parties' settlement and should have acted to ensure its court records did not remain "sealed without any showing that secrecy is warranted or why the public's presumptive right of access is subordinated." *Binh Hoa Le*, 990 F.3d at 420-21. "When it comes to protecting the right of access, the judge is the public interest's principal champion." *Id.* at 421. Thus, it

was reasonable for Adler to expect the court to protect his interest in access to court records, and it was only several months after the case settled that it became apparent that intervention was necessary.

In fact, it was prudent for Adler to wait six months after the case settled. In discussing the first *Stallworth* factor, this Court explained that when an intervenor first becomes aware that a case is pending is not relevant in assessing whether their intervention was timely because "[o]ften the protective step of seeking intervention will later prove to have been unnecessary," such that "scarce judicial resources would be squandered, and the litigation costs of the parties would be increased." *Stallworth*, 558 F.2d at 265. The same is true here. If third parties seeking to access court records must intervene at the time a protective order or sealing order is entered, or even as soon as a case closes, it will cause unnecessary litigation. This Court recently called on its "judicial colleagues to zealously guard the public's right of access to judicial records," recognizing judges are the first line of defense of the public's right of access. *Binh Hoa Le*, 990 F.3d at 421. Intervention by a third-party should be unnecessary unless it becomes apparent that the court has failed to safeguard the public's right of access.

The district court's contrary analysis of the first *Stallworth* factor reflects clear legal error. The court found that Adler has an unexplained delay of 1.5-2.5 years because the protective order he challenges was entered July 10, 2019 and the first sealing order was entered June 10, 2020. ROA.3099-3100. The court's determination that Adler should have intervened at the time the underlying protective order was entered is "conflation error—equating the standard for keeping unfiled discovery confidential with the standard for placing filed materials under seal." *Binh Hoa Le*, 990 F.3d at 420. The protective order should not have dictated the court's sealing determinations, and thus in no way put Adler on notice that he would need to intervene to protect the public's right of access to the court record.

Nor was Adler required to intervene at the time the court first entered a sealing order. Even assuming Adler had some duty to review every docket entry in a case simply because it pertained to his area of study (which he didn't), there was no reason for Adler to think that the court's cursory sealing orders for any document marked confidential under the protective order were permanent sealing orders—especially given the anticipated trial.

In fact, when Relators later challenged the confidentiality and anticipated sealing of court documents, the district court's order was specifically time-limited: "The Court notes that the designation of the disputed documents as confidential would not necessarily preclude their use in an open trial, but sees no basis to strike the confidential designations *at this time*." ROA.2683 (emphasis added). Thus, the best reading of the largely sealed record below indicates that the court was provisionally sealing documents pending trial. At that time, Adler was not on notice that his public right of access would go unprotected even after the case settled. The district court's misunderstanding of the law governing sealing tainted its analysis of the first *Stallworth* factor.

**2.** The second *Stallworth* factor also weighs in favor of granting Adler's motion to intervene because even if Adler had delayed in intervening, such delay did not prejudice the parties to the litigation. In assessing the second factor, "the relevant prejudice is that created by the intervenor's delay in seeking to intervene after it learns of its interest, not prejudice to existing parties if intervention is allowed." *Ford*, 242 F.3d at 240 (citing *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 (5th Cir. 1992)).

The parties to the underlying case will suffer no prejudice by
Adler's supposed delay because Adler does not seek to intervene on the
merits of the underlying case. This Court held as much in *Ford*. There,
the Court assessed the timeliness of a motion to intervene for the
purpose of challenging a confidentiality order. *Id.* The Court found no
prejudice in the intervenor's 23-day delay, but went on to explain that
"because [the intervenor] seeks only to litigate the issue of the
confidentiality order and not to reopen the merits of the dispute
between the original parties, even a greater delay in the intervention
would not have prejudiced the parties." *Id.* (citing *Pansy*, 23 F.3d at
780).

The district court's assessment of prejudice under the second
*Stallworth* factor is based on a legal error. The court found that Adler's
delay would force Defendants to relitigate issues that they justifiably
thought were resolved, citing to Defendants' "Motions for Protection
Regarding Confidentiality Designations." ROA.3100. But the court
never entered an order permanently resolving questions of
confidentiality. In response to TeamHealth's motions for protection
regarding confidentiality designations, the district court only concluded

that it "sees no basis to strike the confidential designations *at this time*," recognizing that "the designation of the disputed documents as confidential would not necessarily preclude their use in an open trial." ROA.2683 (emphasis added). Thus, Adler's motion to intervene is not disrupting any settled expectations.

Nor is Adler's motion to intervene and unseal all court records repetitive of the Relator's challenge to confidentiality designations of 44 documents. Adler is challenging sealing orders, not confidentiality designations, so his motion is in a different procedural posture than the Relator's challenge. *See Binh Hoa Le*, 990 F.3d at 420 (recognizing it is legal error to conflate confidentiality designations with sealing determinations). Thus, Adler's motion to intervene to unseal court records is not duplicative of issues the parties have already litigated.

Finally, any purported delay in Adler's intervention after the case settled does not prejudice TeamHealth. Even if this Court finds that Adler should have intervened the minute that the parties settled and it became clear that there would be no open trial where the fraud allegations come to light, Adler's less than 6-month delay did not affect TeamHealth's ability to defend the sealing of the court record. And any

prejudice TeamHealth may suffer by the actual unsealing of court records is not relevant under *Stallworth*. *See Ford*, 242 F.3d at 240 (explaining "the relevant prejudice is that created by the intervenor's delay . . . not prejudice to existing parties if intervention is allowed").

**3.** The third *Stallworth* factor—the prejudice to Adler and the interests he represents if the motion to intervene is denied—also weighs in Adler's favor. The underlying case concerns alleged fraud by one of the largest providers of emergency department services in the country, impacting the cost of Medicaid and Medicare and ultimately the cost of health care for Americans. ROA.3146. The public has a strong interest in understanding the allegations and the litigation process that led to the ultimate settlement. Yet the public has been denied access to large portions of the court record, including summary judgment briefing, the operative complaint, and a pretrial order, without *any* justification in violation of their longstanding common law and First Amendment rights. If Adler's motion to intervene is rejected as untimely, "future intervention attempts will almost certainly also be found to be untimely, and the public's right of access will go untested." *Liggett Grp., Inc.*, 858 F.2d at 787.

The district court reasoned that Adler would suffer little prejudice because his interests were adequately represented by Relators. But as explained already, the district court never decided to permanently seal the court record. Also, Relators only challenged confidentiality designations—not sealing determinations—and only with respect to a subset of the documents at issue. No party has adequately represented the public's right of access to court records. Nor should the public have to take the court at its word that those 44 documents are properly confidential. TeamHealth's briefing on the issue is entirely sealed, and, contrary to the law of this Circuit, there were "no reasons given, no authorities cited, no document-by-document inquiry . . . no assurance that the extent of sealing was congruent to the need." *Binh Hoa Le*, 990 F.3d at 420.

**4.** Finally, with respect to the fourth *Stallworth* factor, unusual circumstances militate in favor of a finding of timeliness because Adler is not seeking to intervene on the merits of the underlying case, only collateral relief in the form of unsealing court records. *See* Part III.A; *see also In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 249-50 (5th Cir. 2009) (finding "unusual circumstance" in favor of intervention 9 years

after case settled, and after 2 years of unjustified delay, where intervenor challenged collateral *cy pres* distribution issue and was "not asking to reopen the underlying settlement agreement").

## CONCLUSION

For the foregoing reasons, Movant-Appellant Adler respectfully requests that this Court reverse the district court's order denying the motion to intervene and remand for further proceedings.

Dated: January 18, 2023          Respectfully Submitted,

                                 /s/ Ellen Noble

Martin Woodward                  Ellen Noble
KITNER WOODWARD PLLC             Leah Nicholls
13101 Preston Road,              PUBLIC JUSTICE
Suite 110-3323                   1620 L St. NW
Dallas, TX 75240                 Washington, DC 20036
(214) 443-4300                   (240) 620-3645
martin@kitnerwoodward.com        enoble@publicjustice.net

*Counsel for Movant-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on January 18, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Ellen Noble
Ellen Noble
PUBLIC JUSTICE
*Counsel for Movant-Appellant*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a) because this brief contains 10,916 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook 14-point font.

/s/ Ellen Noble
Ellen Noble
PUBLIC JUSTICE
*Counsel for Movant-Appellant*