No. 22-40707

# United States Court of Appeals
*for the*
# Fifth Circuit

United States of America, *ex rel.* Caleb Hernandez and Jason Whaley, Relators, *et al.*, *Plaintiff*,

*v.*

Team Finance, L.L.C.; Team Health, Incorporated; Team Health Holdings, Incorporated; Ameriteam Services, L.L.C.; HCFS Health Care Financial Services, LLC; Quantum Plus, L.L.C., *doing business as* TeamHealth West, *Defendants-Appellees*,

*v.*

Loren Adler, *Movant-Appellant*

*On Appeal from the United States District Court
for the Eastern District of Texas, No. 2:16-cv-432*

## BRIEF OF APPELLEES

Thomas Melsheimer
Michael Brett Johnson
Chad B. Walker
William G. Fox
Winston & Strawn LLP
2121 North Pearl Street
Dallas, TX 75201

Linda T. Coberly
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600
lcoberly@winston.com

Lauren Gailey
Winston & Strawn LLP
1901 L Street, N.W.
Washington, DC 20036

*Counsel for Defendants-Appellees*

## CERTIFICATE OF INTERESTED PERSONS

Counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. *See* 5th Cir. R. 28.2.1. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Ameriteam Services, LLC | Linda T. Coberly |
| HCFS Health Care Financial Services, LLC | Winston & Strawn LLP Chicago, IL |
| Quantum Plus, LLC | |
| Team Finance, LLC | Thomas Melsheimer |
| Team Health Holdings, Incorporated | Michael Brett Johnson Chad B. Walker |
| Team Health, Incorporated | William G. Fox Winston & Strawn LLP Dallas, TX |
| | Lauren Gailey Winston & Strawn LLP Washington, DC |

| Appellants: | Counsel for Appellants: |
|---|---|
| Loren Adler | Leah Nicholls Ellen Noble Public Justice Washington, DC |
| | Martin Woodward Kitner Woodward, P.L.L.C. Dallas, TX |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| Atlantic Monthly Group, L.L.C. | KatieLynn Townsend |
| BuzzFeed, Incorporated | Reporters Committee for Freedom |
| First Amendment Coalition | of the Press |
| Foundation for National Progress | Washington, DC |
| Freedom of Information Foundation of Texas | |
| Freedom of the Press Foundation | |
| Institute for Nonprofit News | |
| Media Institute | |
| National Newspaper Association | |
| National Press Photographers Association | |
| New York Times Company | |
| News/Media Alliance | |
| Pro Publica, Incorporated | |
| Reporters Committee for Freedom of the Press | |
| Society of Environmental Journalists | |
| Society of Professional Journalists | |
| Texas Association of Broadcasters | |
| Texas Press Association | |
| Tully Center for Free Speech | |

s/ *Linda T. Coberly*
*Counsel for Defendants-Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

This is an appeal of the district court's discretionary decision to deny a motion for permissive intervention on timeliness grounds. The relevant record is of limited scope, consisting of just a few documents. Appellees believe this appeal can be decided on the record and briefs, without oral argument.

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT.................................................................1

COUNTER-STATEMENT OF JURISDICTION .....................................4

COUNTER-STATEMENT OF THE ISSUES ...........................................5

STATEMENT OF THE CASE ................................................................6

    A.   Relators turn a disagreement over the sufficiency of
documentation into a federal False Claims Act case .............6

    B.   After briefing and argument by the parties, the district
court permits the sealing of sensitive business
information, keeping it out of the public record....................8

    C.   Three years after the complaint became public—and
six months after it was dismissed—Adler moves to
intervene (without explaining his delay)..............................14

    D.   The court denies Adler's motion for permissive
intervention on three independent grounds.........................18

SUMMARY OF THE ARGUMENT .......................................................20

ARGUMENT .......................................................................................23

  I.   The district court did not abuse its discretion in denying
Adler's motion on timeliness grounds .........................................25

    A.   The *Stallworth* factors apply ...............................................26

    B.   The district court properly conducted a holistic analysis
of the *Stallworth* factors .......................................................33

        1.   Adler could have intervened years earlier....................34

        2.   Adler's delay prejudiced the parties .............................39

iv

3.  The district court correctly assessed the minimal prejudice to Adler .......................................... 43

4.  Any unusual circumstances were either neutral or favored TeamHealth ....................................... 46

II.  The district court did not abuse its discretion in denying permissive intervention under Rule 24(b) ................................. 47

A.  The district court did not err in concluding that Adler shares no "claim or defense" or "common question" with the underlying FCA action ................................... 48

1.  Adler has no "claim or defense" at all ........................ 48

2.  There is no "common question of law or fact" ............... 50

B.  There were also other, independent grounds on which to find that Adler failed to satisfy Rule 24 ......................... 55

1.  A pleading was required ................................. 56

2.  Allowing Adler to intervene would unduly prejudice the parties ...................................... 58

III.  Standing was required to intervene in this closed case— and Adler does not have it ........................................ 59

A.  The Court's precedent requires Article III standing to intervene in a long-closed case for any reason, unsealing or otherwise ........................................ 60

B.  Adler's assertions of Article III standing in a general sense are insufficient ........................................ 63

C.  The district court cannot exercise its inherent authority—or any authority—without jurisdiction .............. 65

CONCLUSION ................................................................. 67

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Pennwood Inv. Corp.*,
　392 F.2d 759 (2nd Cir. 1968) ............................................................ 57

*Bradley ex rel. AJW v. Ackal*,
　954 F.3d 216 (5th Cir. 2020) ...................................................... 27, 28

*Allen-Pieroni v. White*,
　694 F. App'x 339 (5th Cir. 2017) ................................................ 60, 64

*Beckman Indus. v. Int'l Ins. Co.*,
　966 F.2d 470 (9th Cir. 1992) .............................................................. 28

*In re Beef Indus. Antitrust Litig.*,
　589 F.2d 786 (5th Cir. 1979) ................................................ 52, 53, 57

*Binh Hoa Le v. Exeter Finance Corp.*,
　990 F.3d 410 (5th Cir. 2021) ...................................................... 35, 45

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*,
　712 F.3d 1349 (9th Cir. 2013) ............................................................ 29

*Brooks v. Raymond Dugat Co.*,
　336 F.3d 360 (5th Cir. 2003) .............................................................. 60

*Brown v. Advantage Eng'g, Inc.*,
　960 F.2d 1013 (11th Cir. 1992) .................................................... 29, 30

*Bush v. Viterna*,
　740 F.2d 350 (5th Cir. 1984) .............................................................. 55

*Cajun Elec. Power Coop. v. Gulf States Utils., Inc.*,
　940 F.2d 117 (5th Cir. 1991) .............................................................. 23

*Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*,
　918 F.3d 1161 (11th Cir. 2019) .......................................................... 55

*Corley v. Jackson Police Dep't,*
   755 F.2d 1207 (5th Cir. 1985) ............................................................. 27

*Deus v. Allstate Ins. Co.,*
   15 F.3d 506 (5th Cir. 1994) ...................................................... *passim*

*Edwards v. City of Houston,*
   78 F.3d 983 (5th Cir. 1996) .............................................. 4, 23, 24, 36

*EEOC v. Nat'l Children's Ctr., Inc.,*
   146 F.3d 1042 (D.C. Cir. 1998) ..................................................... 28, 62

*Engra, Inc. v. Gabel,*
   958 F.2d 643 (5th Cir. 1992) ......................................... 37, 39, 40, 58

*In re Enron Corp. Secs., Derivative & "ERISA" Litig.,*
   229 F.R.D. 126 (S.D. Tex. 2005) ..................................................... 52

*FDIC v. Ernst & Ernst,*
   677 F.2d 230 (2d Cir. 1982) ............................................................. 28

*Flynt v. Lombardi,*
   782 F.3d 963 (8th Cir. 2015) ........................................................... 54

*Ford v. City of Huntsville,*
   242 F.3d 235 (5th Cir. 2001) ........................................................... 42

*HSBC Bank USA, N.A. v. Crum,*
   907 F.3d 199 (5th Cir. 2018) ............................................................. 5

*Jacobs v. Nat'l Drug Intel. Ctr.,*
   548 F.3d 375 (5th Cir. 2008) ........................................................... 31

*Jessup v. Luther,*
   227 F.3d 993 (7th Cir. 2000) ........................................................... 54

*John Doe No. 1 v. Glickman,*
   256 F.3d 371 (5th Cir. 2001) ..................................................... 36, 46

*Langbecker v. Elec. Data Sys. Corp.,*
   476 F.3d 299 (5th Cir. 2007) ........................................................... 26

*In re Lease Oil Antitrust Litig.,*
   570 F.3d 244 (5th Cir. 2009) ..................................................... 39, 59

*Lexington Ins. Co. v. Caleco, Inc.,*
   2003 WL 21652163 (E.D. Pa.) ............................................................ 56

*LLEH, Inc., v. Wichita County,*
   289 F.3d 358 (5th Cir. 2002) ............................................................. 56

*Love v. Tyson Foods, Inc.,*
   677 F.3d 258 (5th Cir. 2012) ............................................................. 34

*Lovitky v. Trump,*
   949 F.3d 753 (D.C. Cir. 2020) ........................................................... 24

*Lucas v. McKeithen,*
   102 F.3d 171 (5th Cir. 1996) ............................................................. 59

*Ex parte McCardle,*
   74 U.S. 506, 7 Wall. 506 (1869) ................................................... 65, 67

*Moms Against Mercury v. FDA,*
   483 F.3d 824 (D.C. Cir. 2007) ........................................................... 24

*NAACP v. City of Kyle,*
   626 F.3d 233 (5th Cir. 2010) ........................................................ 62, 65

*Newby v. Enron Corp.,*
   443 F.3d 416 (5th Cir. 2006) ........................................................ 52, 60

*Olympic Refin. Co. v. Carter,*
   332 F.2d 260 (9th Cir. 1964) ............................................................. 28

*Pansy v. Borough of Stroudsburg,*
   23 F.3d 772 (3d Cir. 1994) .......................................................... 29, 30

*PHI Grp., Inc. v. Zurich Am. Ins. Co.,*
   58 F.4th 838 (5th Cir. 2023) ....................................................... 31, 62

*Pin v. Texaco, Inc.,*
   793 F.2d 1448 (5th Cir. 1986) ........................................................... 49

*Pub. Citizen v. Liggett Grp., Inc.,*
 858 F.2d 775 (1st Cir. 1988) ...................................................... 28

*Pub. Serv. Co. of N.H. v. Patch,*
 136 F.3d 197 (1st Cir. 1998) ...................................................... 57

*Rollins v. Home Depot USA,*
 8 F.4th 393 (5th Cir. 2021) ................................................ 33, 41

*Ross v. Marshall,*
 426 F.3d 745 (5th Cir. 2005) ...................................................... 46

*Rotstain v. Mendez,*
 986 F.3d 931 (5th Cir. 2021) ............................................. *passim*

*Ruhrgas Ag v. Marathon Oil Co.,*
 526 U.S. 574 (1999) .................................................................. 24

*SEC v. Inv'rs Sec. Leasing Corp.,*
 610 F.2d 175 (3d Cir. 1979) ........................................ 56, 57, 58

*SEC v. Lincoln Thrift Ass'n,*
 577 F.2d 600 (9th Cir. 1978) .................................................... 53

*Shevlin v. Schewe,*
 809 F.2d 447 (7th Cir. 1987) .................................................... 58

*Sierra Club v. Espy,*
 18 F.3d 1202 (5th Cir. 1994) .................................................... 37

*Sommers v. Bank of Am., N.A.,*
 853 F.3d 509 (5th Cir. 2016) .................................................... 39

*St. Bernard Par. v. Lafarge N. Am., Inc.,*
 914 F.3d 969 (5th Cir. 2019) ........................................ 25, 26, 31

*St. Charles Tower, Inc. v. County of Franklin,*
 2009 WL 3852462 (E.D. Mo.) .................................................. 57

*Staley v. Harris County,*
 160 F. App'x 410 (5th Cir. 2005) .............................................. 27

*Stallworth v. Monsanto Co.*
  558 F.2d 257, 266 (5th Cir. 1977) .............................................. *passim*

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) .................................................................... 24, 62, 65

*Tex. Democratic Party v. Hughs,*
  997 F.3d 288 (5th Cir. 2021) ............................................................ 5

*Turner v. Cincinnati Ins. Co.,*
  9 F.4th 300 (5th Cir. 2021) ................................................... 47, 55, 59

*United Nuclear Corp. v. Cranford Ins. Co.,*
  905 F.2d 1424 (10th Cir. 1990) ........................................................ 29

*United States v. Allegheny-Ludlum Indus., Inc.,*
  553 F.2d 451 (5th Cir. 1977) .......................................................... 39

*United States v. Bowen,*
  818 F.3d 179 (5th Cir. 2016) ..................................................... 56, 65

*United States v. Covington Cnty. Sch. Dist.,*
  499 F.3d 464 (5th Cir. 2007) ....................................................... 36, 37

*United States v. U.S. Steel Corp.,*
  548 F.2d 1232 (5th Cir. 1977) .......................................................... 37

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.,*
  913 F.3d 443 (5th Cir. 2019) ................................................ 12, 13, 44

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.,*
  922 F.2d 92 (2d Cir. 1990) .............................................................. 51

## Constitutional Provisions and Statutes

U.S. Const. art. III.................................................................... *passim*

U.S. Const. art. III, § 2, cl. 1 .................................................. 60

28 U.S.C. § 1291 ...................................................................... 4

28 U.S.C. § 1331 ...................................................................... 4

28 U.S.C. § 1367 ............................................................................ 4

False Claims Act, 31 U.S.C. §§ 3729–3733 ................................ 7

**Other Authorities**

@LorenAdler, Twitter (Dec. 9, 2019, 4:27 PM) ........................ 16, 32, 38

@LorenAdler, Twitter (July 31, 2020, 8:48 PM) ....................... 17, 32, 37

Advisory Committee on Rules for Civil Procedure, Meeting
   Minutes (Mar. 1946) ............................................................. 49

*Black's Law Dictionary* (11th ed. 2019) .................................... 48

Brenna McDowell, *TeamHealth Co-founder Has Always
   Worked in the Trenches*, KnowNews.com (Sept. 12, 2019) ........ 6

Charles Alan Wright et al., *Federal Practice and Procedure*
   (3d ed. 2007) .......................................................................... 49

Fed. R. Civ. P. 7 ........................................................................ 56

Fed. R. Civ. P. 7(a) .................................................................... 56

Fed. R. Civ. P. 24 .............................................................. *passim*

Fed. R. Civ. P. 24(a) .................................................................. 25

Fed. R. Civ. P. 24(b) ......................................................... *passim*

Fed. R. Civ. P. 24(b)(1) ...................................................... *passim*

Fed. R. Civ. P. 24(b)(1)(A) ........................................................ 19

Fed. R. Civ. P. 24(b)(1)(B) ....................................... 19, 47, 48, 50

Fed. R. Civ. P. 24(b)(3) ................................................. 22, 56, 58

Fed. R. Civ. P. 24(c) .......................................................... *passim*

*What Is TeamHealth?*, TeamHealth.com .................................. 6

## PRELIMINARY STATEMENT

This is not a First Amendment case.  It is a review of a district court's decision to deny permissive intervention—a quintessentially discretionary matter.  The court's exercise of discretion was more than sound under these circumstances, given that the prospective intervenor waited three years after the case hit the public docket and another six months after it was closed to try to insert himself into the proceedings, offering no explanation for his delay.

The prospective intervenor, Loren Adler, purports to have a professional interest in TeamHealth.  Indeed, he has posted about TeamHealth—and, specifically, litigation against TeamHealth—on social media.  This case had been sitting on the public docket since July 2018, readily accessible on PACER to anyone with an internet connection.  Surely Adler, who claims to write about TeamHealth for a living and was following it in the news, could have been expected to know about it.  He had real-time access to information about filings in the case—such as the confidentiality and sealing orders he now takes issue with.  He also had access to public versions of the sealed filings themselves, with redactions narrowly drawn to shield only the

confidential information that posed too great a risk of harm if disclosed. And Adler could have seen the parties' notice of their impending settlement in February 2021 and known the clock was ticking for him to challenge those orders. Yet Adler did nothing. To this day, he has not been able (or willing) to explain why.

Adler seeks only *permissive* intervention; he has never claimed any right to take part in this case. When intervention is by permission, a district court's discretion to grant or deny it is extraordinarily broad. Even if the requirements of Rule 24(b) of the Federal Rules of Civil Procedure are met, the district court is still under no obligation to let the prospective intervenor into the case.

But those requirements were not met here. Rule 24(b)'s threshold requirement is that a motion to intervene must be *timely*. Under this Court's precedent, the district court was well within its discretion to refuse to allow Adler to sit back and wait for no good reason, only to emerge from the woodwork months after the parties settled and moved on, insisting for his own reasons that the court should unseal every document in the case.

Adler also failed to comply with the technical requirements of Rule 24(b).  He filed no "pleading" and raised no "claim or defense," let alone one that shared common questions of fact and law with the underlying False Claims Act case.  And letting him into the case now would prejudice the parties by forcing them to reconvene to relitigate sealing issues they reasonably thought were resolved years ago.  The court did not abuse its discretion in taking his delay into account.

Adler's decision to wait to intervene until after the case was closed also had another consequence.  Given the closure of this case, Adler was required to establish his own Article III standing.  Under this Court's precedent, he cannot do so.  Other courts might take a more flexible approach to standing in unsealing cases, but this Court is more protective of its own jurisdiction.  The district court correctly held that Adler needed to demonstrate standing specific to this case, and he failed to do so.

The district court properly exercised its discretion to decline to allow Adler into the case.  And because he was not a party, he cannot bring this appeal.  The Court should dismiss for lack of jurisdiction.

## COUNTER-STATEMENT OF JURISDICTION

There is no dispute that "[a]n order denying intervention as of right is a final order" for purposes of 28 U.S.C. § 1291. *Rotstain v. Mendez*, 986 F.3d 931, 936 (5th Cir. 2021); *see* Adler Br. 5. But the jurisdictional "inquiry is not complete" in this case, where the appellant seeks permissive intervention and is not a party. *See Edwards v. City of Houston*, 78 F.3d 983, 993 (5th Cir. 1996) (en banc); *see also Rotstain*, 986 F.3d at 942 (applying *Edwards* to permissive intervention). "[O]ne who is not a party to a lawsuit, or has not properly become a party, has no right to appeal a judgment entered in that suit." *Edwards*, 78 F.3d at 993. That is precisely the case here. Because the district court "did not abuse its discretion by denying permissive intervention" to let Adler into the case, Adler has no right to appeal under § 1291, and this Court "must dismiss the appeal for lack of jurisdiction." *Rotstain*, 986 F.3d at 942 (quoting *Edwards*, 78 F.3d at 992).

TeamHealth also disputes Adler's asserted bases for the district court's jurisdiction over his own after-the-fact involvement in this False Claims Act case. *See* Adler Br. 4 (citing 28 U.S.C. §§ 1331, 1367). Adler cannot simply piggyback on the district court's jurisdiction to decide the

FCA claims, which were dismissed well before Adler attempted to insert himself into the proceedings.  As TeamHealth will explain in Part III below, Adler lacked Article III standing to intervene in the case, and "[s]tanding is a component of subject matter jurisdiction." *HSBC Bank USA, N.A. v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018).

But this Court "always ha[s] jurisdiction to determine [its] own jurisdiction." *Tex. Democratic Party v. Hughs*, 997 F.3d 288, 290 (5th Cir. 2021).  Specifically, it has provisional jurisdiction to review whether the district court was within its discretion to deny permissive intervention, as well as its determination that Adler lacked standing. *Rotstain*, 986 F.3d at 942; *Hughs*, 997 F.3d at 290; *see* Adler Br. 5. Examining those issues should lead this Court to dismiss the appeal.

## COUNTER-STATEMENT OF THE ISSUES

I.    Whether the district court abused its discretion by denying Adler permission to intervene on timeliness grounds three years after the case became public, eighteen months after the sealing order Adler seeks to challenge, and six months after the case was closed.

II.   Whether the district court abused its discretion by denying Adler permission to intervene under Rule 24(b) where Adler shares no

"claim or defense" with the underlying False Claims Act case, raised no "common question," filed no "pleading," and sought an intervention that would have prejudiced the parties.

III.  Whether the district court erred in holding that, under this Court's precedent, Adler lacked Article III standing to intervene in this closed case.

## STATEMENT OF THE CASE

### A.   Relators turn a disagreement over the sufficiency of documentation into a federal False Claims Act case.

TeamHealth was founded by a small group of doctors who in 1979 created a business that would supply staffing and management services to emergency rooms to help them provide high-quality care.  *See What Is TeamHealth?*, TeamHealth.com, http://bit.ly/3FBLF7H (last visited Mar. 29, 2023); Brenna McDowell, *TeamHealth Co-founder Has Always Worked in the Trenches*, KnowNews.com (Sept. 12, 2019), http://bit.ly/3Jt7fwb.  This innovative business model took off, and four decades later, TeamHealth has become one of the nation's largest integrated care providers, operating in 47 states and affiliating with more than 15,000 clinicians.  *What Is TeamHealth?*, *supra*; ROA.1112.  These clinicians contract with subsidiaries of TeamHealth, which in turn

contract with hospitals where the clinicians provide emergency medical services to patients.  ROA.3375.

In 2016, two former employees of TeamHealth ("Relators") brought a qui tam suit against several of TeamHealth's business units. ROA.85–87; *see also* ROA.3146 (adding more business units in amended pleading), ROA.4377–78 (describing defendants in answer).  The suit alleged that TeamHealth violated the federal False Claims Act (FCA), 31 U.S.C. §§ 3729–3733, and similar state statutes by engaging in two alleged fraudulent schemes involving false claims for Medicare reimbursement for emergency-room services.  ROA.3147.  The first set of allegations accused TeamHealth of overbilling Medicare by submitting claims for "critical care" services—that is, care for the most emergent kinds of injuries—when they should have been submitted as claims for less-expensive services.  ROA.3154–60.  The other accused TeamHealth of submitting claims to Medicare for services performed by doctors when, in fact, physician assistants had performed the services. ROA.3147–54.

TeamHealth denied (and still does) that it engaged in any fraudulent conduct, arguing that its billing practices complied with all

applicable laws, regulations, and billing guidelines. ROA.3372–74, ROA.3385–93, ROA.3397–403. Relators' claims really boiled down to disagreements about the sufficiency of medical documentation; there was never any evidence of fraud. ROA.3385–93, ROA.3397–403.

**B.   After briefing and argument by the parties, the district court permits the sealing of sensitive business information, keeping it out of the public record.**

Like all qui tam cases, the case was originally filed under seal to give the government the opportunity to investigate in secret. *See* ROA.81, ROA.125–26; *see also* ROA.3000 ("the United States' pre-intervention filings discuss[ed] details of the Government's investigation"). It became public knowledge, however, when—after the United States and a number of States declined to intervene—the district court unsealed the complaint in July 2018. ROA.125–26.

As is also common to facilitate discovery in FCA cases, in July 2019, the parties jointly moved for a protective order. ROA.905–07. But they disputed the level of confidentiality that was necessary at the time. *See* ROA.907. TeamHealth explained that because healthcare is "a highly regulated and competitive industry," it needed a "Highly Confidential – Attorneys' Eyes Only" designation to protect its "highly

competitive information." ROA.906–07. Relators contested the
necessity of the "Highly Confidential – Attorneys' Eyes Only"
designation, arguing that the case "d[id] not involve an intellectual
property or trade secret[s]," and therefore that there was no "present
need for heightened protection." ROA.907. The district court rejected
Relators' position, finding that (1) "[d]ocuments or information
containing confidential proprietary and business information and/or
trade secrets" were "likely to be disclosed," (2) "public dissemination
and disclosure" of such information "could severely injure or damage"
the affected party and "place [it] at a competitive disadvantage," and
(3) counsel receiving the material were "presently without sufficient
information" to accept the producing party's representations about
confidentiality. ROA.933. Accordingly, "[t]o protect the respective
interests of the parties and to facilitate the progress of disclosure and
discovery," the court permitted the parties to use the "Highly
Confidential – Attorneys' Eyes Only" designation. ROA.933–34.

In September 2020, Relators challenged the confidentiality
designations of more than 500 pages of documents. ROA.4025;
ROA.4033–34 (listing documents). TeamHealth moved for a protective

order to keep the documents confidential.  ROA.4025–28.  While the

motion was pending, Relators challenged the confidentiality

designations of another, larger set of documents, bringing the total

number of challenged pages into the thousands.  ROA.4184, ROA.4192–

93 (listing documents).  TeamHealth again moved for a protective order.

ROA.4184–87.

      As a basis for keeping the documents confidential, TeamHealth

explained that the material in question consisted of "sensitive,

proprietary, and confidential business documents, protected health

information, as well as sensitive hospital information."  ROA.4026,

ROA.4185.  TeamHealth pointed to "proprietary policies and procedures

regarding billing[] and employee payment programs[ that] contain

proprietary and/or sensitive business information, and/or patient

Protected Health Information" including "over 5,000 pages of patient

medical records."  ROA 4186 (citations omitted); *see also* ROA.4027

(citing examples from first tranche, including "several patient claims"

that "includ[e] significant amounts of patient protected health

information").  The motions cited specific examples and attached sample

documents for the district court's review.  *See* ROA.4027 (attaching patient claim forms), ROA.4186 (citing Bates numbers).

TeamHealth further argued that its concern about its sensitive proprietary information being used in inappropriate and commercially harmful ways was "not unfounded or imagined."  ROA.4027, ROA.4186. It cited a specific example: someone had already posted information from court filings on TeamHealth's Wikipedia page in ways that mischaracterized the district court's rulings and portrayed TeamHealth unfairly.  ROA.4027–28, ROA.4186.

At the December 2020 hearing on TeamHealth's motions, Relators argued that the designated documents ought to be available on the district court's public docket.  *See* ROA.4131 ("[G]iven the procedural posture of this action and the nature of the materials at issue, Defendants have not and cannot carry their burden to overcome the public's right to access these materials."), ROA.4132–35 (discussing sealing analysis); ROA.4236 (stating that Team Health could not "carry [its] heavy burden to overcome the longstanding strong presumption in favor of public access to judicial proceedings") ROA.4237–40 (discussing sealing analysis).  Relators explained that they had agreed to file

confidential information under seal only because the protective order required them to do so. ROA.4669. In Relators' view, "this case is so uniquely of public interest that . . . this information should be made available, including on the Court's docket, for the public to see." *Id.*; ROA.4132–35, ROA.4237–40.

In response, the district court expressed its reluctance to try the case "in the media." ROA.4670. Reserving the issue of how the confidentiality issue might play out if the documents were eventually needed as evidence at trial, the district court granted TeamHealth's motions for protection from the bench and summarized its rulings in an order entered soon afterward. ROA.4677 (transcript filed on public docket); *see also* ROA.2682–84 (Dec. 23, 2020 order).

Meanwhile, the district court had begun to enter orders sealing documents that contained TeamHealth's sensitive information on similar grounds, though also evaluating the heightened standard set by the familiar balancing test for whether the public has a right of access. *See Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019). The first sealing order was entered on June 10, 2020, in response to a motion filed by Relators. *See* ROA.1759–60.

Accepting Relators' arguments that the document they sought to seal "contains confidential information," and that "the public disclosure of [that information] creates a substantial risk of harm that outweighs the strong presumption in favor of public access to judicial proceedings," the district court granted the motion. *Id.*

For similar reasons, the district court granted both parties' sealing motions on 29 occasions. *See* ROA.1759–60, ROA.1765–66, ROA.1839–40, ROA.1858–59, ROA.1970, ROA.2194–95, ROA.2241–42, ROA.2285–86, ROA.2534–37, ROA.2573, ROA.2578–79, ROA.2590, ROA.2615–16, ROA.2623, ROA.2628, ROA.2650–51, ROA.2660, ROA.2667, ROA.2680–81, ROA.2695–96, ROA.2797–98, ROA.2805–06, ROA.2828, ROA.2847–50, ROA.2869–70, ROA.2906–07. In each case, the parties filed public versions of the sealed documents, with redactions designed to protect only the information necessary to maintain confidentiality. *See, e.g.*, ROA.4461–90 (redacted Amended Joint Pretrial Order).

In February 2021, as trial approached, TeamHealth and Relators filed a notice on the public docket stating that they had agreed in principle to settle and were "working expeditiously on a final written settlement agreement" that would then have to "receive multiple

approvals within the Department of Justice." ROA.2871. To allow the

parties and the United States time to tie up these loose ends, the

district court stayed the case, first for 30 days, and ultimately, after

several extensions, through June 14, 2021. ROA.2875–76, ROA.2890,

ROA.2896–97, ROA.2908–09. On that date, the parties filed a

stipulation of dismissal conditioned on TeamHealth's satisfying its

payment obligations. ROA.2910–12. A week later, once payment had

been completed, the parties requested dismissal. ROA.2918. The

district court dismissed the case with prejudice on June 25, 2021.

ROA.2924.

> **C.   Three years after the complaint became public—and six months after it was dismissed—Adler moves to intervene (without explaining his delay).**

On December 14, 2021—almost six months to the day after the

district court dismissed the FCA case against TeamHealth—Loren

Adler moved to intervene in the closed case by permission under

Federal Rule of Civil Procedure 24(b)(1). ROA.2925–26. In Adler's

words, he sought to intervene for a "limited purpose": to challenge the

district court's sealing orders. *Id.*; *see also* ROA.2940–54 (proposed

motion to unseal).

The ask was actually broader than that—Adler hoped to challenge not only the sealing orders, but the underlying designations that kept them confidential for discovery purposes. *See* ROA.2925–27, ROA.2940–55. The scope of affected documents was not "limited," as Adler had said; he intended to move to unseal every single document covered by the district court's sealing orders. ROA.2925; *see also* ROA.2954 ("The Court should unseal the briefs and hundreds of sealed documents produced by TeamHealth that the parties submitted on the public docket"), ROA.2974 (proposed order "that all documents filed under seal in [this] case be unsealed").

To justify his interest in this case, Adler identified himself as "a health care economist who focuses his work [at a think tank] on health care pricing" and "has studied Medicare, Medicaid, and TeamHealth specifically." ROA.2927; *see also* ROA.2978 (stating in declaration that "[s]ome of [Adler's] research has focused on TeamHealth"). Indeed, Adler purports to "stud[y] and publish[] extensively on TeamHealth." ROA.2927. For example, he "co-authored a [2021] paper" that "examine[d] the question of whether the involvement of private equity-owned companies—specifically TeamHealth . . . among others—would

increase costs and lower health care quality, and the possible public policy responses." ROA.2928, ROA.2978. Adler says he "believe[s] the information in this case would be highly informative to his research . . . because it likely reflects how medical providers" like TeamHealth "address billing in the Medicare and Medicaid programs," and "would be instructive as to how providers bill for services generally." ROA.2979.

Adler's online activity confirms that he was following and commenting on news stories related to TeamHealth. In December 2019, Adler responded to a tweet about arbitration of billing disputes with a reference to TeamHealth:



@LorenAdler, Twitter (Dec. 9, 2019, 4:27 PM), https://bit.ly/3JP9Hi2.

Adler was also following litigation against TeamHealth. In July 2020, Adler tweeted about a "[n]ew class action lawsuit filed against TeamHealth":



**Loren Adler**
@LorenAdler

New class action lawsuit filed against TeamHealth (one of the large PE-backed staffing firms well known for their role in surprise billing), alleging hospital and ER billing fraud.

businesswire.com/news/home/2020...

8:48 PM · Jul 31, 2020

@LorenAdler, Twitter (July 31, 2020, 8:48 PM), https://bit.ly/3JrVare.

Notably, when both of these tweets were posted, and while the article Adler referenced in his declaration and briefing was being written and published, this case was pending in the district court. But despite Adler's professed interest in TeamHealth and in lawsuits against it, he showed no apparent interest in this litigation until he moved to intervene in December 2021.

At that point, the case had been unsealed and visible on the public docket for nearly three-and-a-half years. *See* ROA.126 (July 2, 2018 order unsealing case). Two-and-a-half years had passed since the protective order was entered over Relators' objection to the confidentiality designations. ROA.905–09, ROA.932–42. And it had been a year and a half since the first of the 30 sealing orders Adler purports to challenge was entered. *See* ROA.1759–60. Yet Adler took

no action. Even the parties' notice of settlement in February 2021 did not spur Adler to act (ROA.918–22); he continued to sit back throughout the extended delay while the parties were finalizing and the government was approving the settlement. *See* ROA.2884–89. In all, Adler had four months between the notice of settlement and the time the case was dismissed in which to act. *See* ROA. 918–22, ROA.2923–24. But he did nothing, and the court closed the case. Indeed, even after it was closed, Adler waited *another* six months before he moved to intervene. ROA.2925–37.

Despite Adler's professions of interest in this case, he has never offered an explanation for his delay.

### D. The court denies Adler's motion for permissive intervention on three independent grounds.

TeamHealth opposed Adler's motions to intervene and to unseal, emphasizing the untimeliness of Adler's request.[1] ROA.3005, ROA.3017.

---

[1] Relators took no position on either of Adler's motions. ROA.2937. The government opposed Adler's motions to intervene and to unseal "to the extent [they] could be construed to seek unsealing of the United States' pre-intervention pleadings." ROA.2998–3000.

The district court agreed—on timeliness and two other independent grounds as well. ROA.3103. *First*, the court concluded that this Court's case law required Adler to establish Article III standing to intervene in a closed case, and Adler had not done so. ROA.3097. The court therefore lacked jurisdiction to grant the motion. *Id. Second*, even if there had been jurisdiction, the result would not change, as the district court found Adler's motion untimely under the factors this Court set forth in *Stallworth v. Monsanto Co.*, for evaluating the timeliness of permissive intervention under Rule 24(b). ROA.3098–99 (citing 558 F.2d 257, 266 (5th Cir. 1977)). *Third*, the district court found that Adler had failed to meet Rule 24(b)'s substantive requirements in any event. ROA.3102–03. Adler did not claim a conditional right to intervene under a federal statute under Rule 24(b)(1)(A), and he failed to demonstrate that he had "a claim or defense that share[d] with the main action a common question of law or fact" under Rule 24(b)(1)(B). *Id.* After denying Adler's motion to intervene, the district court denied his motion to unseal as moot. ROA.3103.

Adler timely appealed. ROA.3104.

## SUMMARY OF THE ARGUMENT

"[R]eversing a district court's decision denying permissive intervention is 'so unusual as to be almost unique.'" *Rotstain*, 986 F.3d at 942 (quotation omitted). This is not that "unusual" case. Indeed, it is not even close. The district court denied permissive intervention on three different grounds, each of which was sufficient on its own to justify denying Adler's motion to intervene. The appeal can be dismissed on any of those grounds.

I.    The intervention was untimely. Despite following TeamHealth closely, Adler waited three-and-a-half years after the case became public knowledge and six months after it closed to attempt to intervene—far longer than what this Court considers "timely." The district court's denial of Adler's motion on timeliness grounds was well within its discretion.

The district court rightly applied the timeliness factors this Court identified in *Stallworth*, and its findings on each factor were sound. *First*, the length of the delay weighs against timeliness. Adler had been on notice of the case since it hit the public docket in July 2018, and the confidentiality and sealing issues he attempts to raise were litigated in

2019 and 2020.  And still, he waited ten months after the case settled

and six months after it was dismissed to intervene.  *Second*, allowing

Adler to intervene would prejudice TeamHealth by forcing it to

relitigate issues it justifiably thought were resolved long ago.  *Third*,

Adler will suffer little prejudice by comparison, because Relators

challenged and litigated TeamHealth's confidentiality designations

early in the case.  *Fourth*, Adler offered no "convincing" justification—or

any reason at all—for his delay.   The district court was best positioned

to make these findings and did not abuse its discretion in concluding

that Adler's motion was untimely.

II.    Nor did the district court abuse its discretion when it

concluded that Adler failed to satisfy Rule 24(b)'s requirement of a

"claim or defense that shares with the main action a common question

of law or fact."  Adler has no "claim" (an interest or remedy recognized

at law) or "defense" (a reason why the plaintiff has no valid case) in this

FCA action.  Admittedly, Adler seeks to intervene on a collateral

matter: unsealing documents.  Although some courts have relaxed these

requirements, accepting the legal fiction that the parties also have an

interest in the public's access to information, this Court has rejected

that approach. The district court was well within its discretion to adhere to the text of the rule.

Adler also failed to satisfy Rule 24 for two other reasons the district court did not need to reach. Adler's motion to intervene was not accompanied by a "pleading," as Rule 24(c) requires. And to allow Adler to intervene at such a late stage would unduly prejudice the parties in violation of Rule 24(b)(3), as they would be forced to relitigate settled issues long after the underlying case was resolved. Each of these independent grounds confirms that the appeal should be dismissed.

III.     Finally, a prospective intervenor in a closed case must have Article III standing—and Adler does not. This Court's precedent confirms that once a case is resolved and closed, a would-be intervenor needs his own Article III standing, and the desire for information is not sufficient to establish it. Other courts might take a more flexible approach to standing in unsealing cases, but this Court is more protective of its own jurisdiction. The district court was correct that Adler needed to demonstrate standing specific to *this* case, and he cannot. The district court was never asked to exercise its inherent authority to allow Adler to intervene, but even if it were, it would not

have had jurisdiction to allow him to. And in any event, the court expressed no willingness to let Adler into the case.

Because the district court properly concluded that Adler cannot intervene, he has no right to bring this appeal. It should be dismissed.

## ARGUMENT

An order denying permissive intervention "is reviewed for clear abuse of discretion." *Edwards*, 78 F.3d at 995. "Under this standard, the Court will reverse a district court decision only under extraordinary circumstances." *Id.* (quoting *Cajun Elec. Power Coop. v. Gulf States Utils., Inc.*, 940 F.2d 117, 121 (5th Cir. 1991)).

Those circumstances are not present here, where the district court denied Adler's motion to intervene on three separate and independent grounds, none of which was contrary to law: (i) Adler's motion was untimely, having inexplicably been filed years after public docket events had put him on notice of this litigation and six months after the case was closed; (ii) Adler failed to satisfy Rule 24(b)'s requirements for permissive intervention; and (iii) Adler needed, but lacked, Article III standing to intervene.

Although a court must answer the Article III question to assure itself of its own jurisdiction (*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)), this Court is free to resolve this case in TeamHealth's favor on any of those three grounds.  This is because, in this unusual procedural posture, they are *all* effectively jurisdictional.  As explained above, Adler only has a right to appeal if the district court abused its discretion in denying his motion to intervene.  *Edwards*, 78 F.3d at 992.  For purposes of this appeal, then, whether the district court properly exercised its discretion to deny intervention on timeliness and Rule 24(b) grounds is also a matter of jurisdiction.

If an appeal raises more than one jurisdictional issue, this Court "may inquire into either and, finding it lacking, dismiss the matter without reaching the other."  *Moms Against Mercury v. FDA*, 483 F.3d 824, 826 (D.C. Cir. 2007) (dismissing appeal on administrative-law grounds without reaching standing) (citing *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (*Steel Co.* "does not dictate a sequencing of jurisdictional issues")); *cf. Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020) (because threshold requirements for mandamus are jurisdictional, "whether jurisdiction exists . . . is intertwined with the

24

merits") (quotation omitted).  TeamHealth thus addresses the issues in order of increasing complexity, beginning with the most straightforward.  Each on its own requires dismissing this appeal.

## I.   The district court did not abuse its discretion in denying Adler's motion on timeliness grounds.

The district court acted well within its discretion when it determined that Adler's motion to intervene under Rule 24(b) was untimely, having been filed three-and-a-half years after the case became public and six months after it was dismissed.  ROA.3101; *see* ROA125–26, ROA.2923–24.

Rule 24 "prize[s] punctuality."  *St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974 (5th Cir. 2019).  Timeliness is a prerequisite—but not a sufficient condition—for permissive intervention under Rule 24(b), which provides that "[o]n *timely* motion, the court *may* permit anyone" who satisfies the rule's list of requirements to intervene."  *See* Fed. R. Civ. P. 24(b)(1) (emphases added).  The timeliness requirement applies more strictly to permissive intervenors under Rule 24(b) than to those who intervene as of right under Rule 24(a).  *Rotstain*, 986 F.3d at 942.

"[W]hether . . . intervention is timely is largely committed to the discretion of the district court, and its determination will not be overturned on appeal unless an abuse of discretion is shown." *Stallworth*, 558 F.2d at 263.  In *Stallworth*, this Court announced four factors to guide district court's evaluation of the timeliness of a motion to intervene under Rule 24(b).  *Id.* at 264–66.  Because the district court here correctly identified and applied these factors, it did not abuse its discretion.  *See Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 306 (5th Cir. 2007).

## A.    The *Stallworth* factors apply.

Contrary to Adler's argument (at 45), the court's decision to apply the *Stallworth* factors to his motion (ROA.3099) was not an "erroneous understanding of governing law," as would be required to find an abuse of discretion.  *Langbecker*, 476 F.3d at 306.  Just two years ago in *Rotstain*, this Court applied the *Stallworth* factors in confirming that the district court did not abuse its discretion in denying mandatory *and* permissive intervention.  986 F.3d at 942.  The Court has never expressed any doubt that *Stallworth* governs the timeliness of motions to intervene and has applied the factors again and again.  *St. Bernard*

*Par.*, 914 F.3d at 974–76 (applying *Stallworth* and finding mandatory and permissive intervention untimely); *Staley v. Harris County*, 160 F. App'x 410, 414 (5th Cir. 2005) (affirming denial of permissive intervention based on *Stallworth* factors); *Corley v. Jackson Police Dep't*, 755 F.2d 1207, 1210 (5th Cir. 1985) ("[v]iewing timeliness through the *Stallworth* prism" and holding that denial of permissive intervention was within district court's discretion).

Nor has this Court ever suggested that the *Stallworth* factors do not apply under certain circumstances—such as, Adler argues, when an intervenor wants a district court to unseal records.  Adler Br. 42.  Adler's argument that the purportedly "collateral" purpose of his motion changes the analysis is unsupported.  *Id.* at 45.  For support, Adler relies principally on this Court's decision in *Bradley ex rel. AJW v. Ackal*, where a media outlet intervened to challenge sealing orders four months after a case settled and was dismissed without prejudice.  Adler Br. 43 (citing 954 F.3d 216, 224 (5th Cir. 2020)).  But as the district court rightly recognized, *Bradley* has nothing to say about whether *Stallworth* applies.  ROA 3099.  The reason this Court did not apply *Stallworth* in *Bradley* is that the latter case "did not address timeliness

in the context of permissive intervention, nor did it address intervention in general—the third party in that case had already been allowed to intervene and timeliness was not contested." *Id.* *Bradley* did not create an exception to *Stallworth*; it simply was not needed there.

The cases Adler cites from the Ninth and other circuits do not exempt him from this Court's timeliness requirement either. According to Adler, these cases suggest that courts should ignore Rule 24(b)'s timeliness requirement when intervenors seek to challenge sealing orders. Adler Br. 44–45. They say no such thing. Some of the cases did not involve motions to intervene at all. *See FDIC v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982); *Olympic Refin. Co. v. Carter*, 332 F.2d 260, 265–66 (9th Cir. 1964). In others, timeliness was either not in dispute (*EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1047 (D.C. Cir. 1998)) or was not addressed by the court (*Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). And in another case, the court *did* apply the *Stallworth* factors in affirming the district court's exercise of discretion. *See Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 785 (1st Cir. 1988).

Nor do the out-of-circuit cases Adler cites support his argument that the district court abused its discretion in finding his motion untimely here.  Adler Br. 43–44.  Besides the cases just discussed, Adler cites cases from the Ninth, Third, Tenth, and Eleventh Circuits that permitted interventions to challenge sealing and confidentiality orders long after litigation had concluded.  Adler Br. 43–44 (citing *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013), *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 779 (3d Cir. 1994), *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1015–16 (11th Cir. 1992), and *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990)).

Outcomes aside, these cases do not stand for the proposition that a district court *necessarily* abuses its discretion by denying permissive intervention for the purpose of challenging a sealing order.  If anything, *Blum* and *United Nuclear* stand for the proposition that courts of appeals tend to defer to the district court's discretion to allow intervention or not.  *Blum*, 712 F.3d at 1353 ("We review a decision whether to grant permissive intervention under an abuse of discretion standard.") (quotation omitted); *United Nuclear*, 905 F.2d at 1427 ("Of

29

course, permissive intervention is a matter within the sound discretion of the district court, and we will not disturb its order except upon a showing of clear abuse.") (quotation omitted). And *Pansy* only held (under a de novo standard of review) that the district court erred as a matter of law in concluding that intervention is never proper after a case has settled. *See* 23 F.3d at 778–79. That court declined to address "whether in some circumstances a trial court, in the exercise of its discretion, may rightly conclude that untimeliness . . . justify refusal of intervention where the intervenors seek to contest an ancillary issue." *Id.* at 779 n.9.

The Eleventh Circuit's *Brown* decision did not discuss timeliness—or any other factor resembling *Stallworth*—in reversing a denial of permissive intervention where the prospective intervenor sought access to judicial records. 960 F.2d at 1016. This Court's *Stallworth* analysis demands more, and the Court has never excepted any particular class of prospective intervenors from it. Nor should the Court do so now. Indeed, it cannot; the exception for which Adler cites those out-of-circuit cases conflicts with binding circuit precedent applying the *Stallworth* factors (*e.g.*, *Rotstain*, 986 F.3d at 942) and

30

emphasizing the importance of "punctuality" under Rule 24 (*St. Bernard Par.*, 914 F.3d at 974). *See PHI Grp., Inc. v. Zurich Am. Ins. Co.*, 58 F.4th 838, 842 n.3 (5th Cir. 2023) ("The rule of orderliness means 'one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court.'") (quoting *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008)); *Jacobs*, 548 F.3d at 375 ("[E]ven if a panel's interpretation of the law appears flawed, the rule of orderliness prevents a subsequent panel from declaring it void.").

In any event, there is no need for this Court to revisit its approach. Excepting motions to intervene from Rule 24's timeliness requirement—whether for purposes of unsealing or otherwise—would encourage bad behavior by rewarding prospective intervenors who sit on their rights. This would incentivize more delays in the future, and more aggravation for judges and clerk's offices that will be forced to revisit old cases they long thought closed. *See Stallworth*, 558 F.2d at 265–66 (Rule 24 intended to "foster economy of judicial administration" and, like laches, "estop[]" intervenors who inexcusably delay).

31

This case is a prime example.  Adler claims to study TeamHealth, and he followed along with news headlines and litigation involving TeamHealth while this case was pending.  *See* @LorenAdler, Twitter (Dec. 9, 2019, 4:27 PM), https://bit.ly/3JP9Hi2; @LorenAdler, Twitter (July 31, 2020, 8:48 PM), https://bit.ly/3JrVare; ROA.2978–79.  Meanwhile, the district court had entered protective orders and numerous sealing orders on the docket, putting Adler (and every other member of the public) on notice that TeamHealth's sensitive information was being filed under seal.  Adler could have intervened then, but he did not.  Instead, he did nothing, waiting until six months after the case was over to return to the district court and attempt to reopen the case—pulling the court, the parties, and the government back into litigation they reasonably thought was over.  This sort of inefficiency and prejudice should not be encouraged by exempting prospective intervenors from the timeliness requirement stated in the plain text of Rule 24(b).  *See infra* I.B.2, II.B.2.  Instead, the Court should adhere (as it must) to *Stallworth*, which already captures sound policy considerations like the length of the delay and prejudice in its analysis.  *See Stallworth*, 558 F.2d at 264–66.

**B.    The district court properly conducted a holistic analysis of the *Stallworth* factors.**

Not only did the district court not abuse its discretion by applying *Stallworth*, but it also correctly analyzed the factors: (1) the length of time the movant waited to file, (2) the prejudice to the existing parties from any delay, (3) the prejudice to the movant if the intervention is denied, and (4) any unusual circumstances.  558 F.2d at 264–66.

Adler should not be permitted to argue otherwise before this Court, as he did not address how the *Stallworth* factors apply in the proceedings below.  *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) (arguments not raised in district court are forfeited on appeal).  Adler's motion to intervene did not mention *Stallworth*.  *See* ROA.2925–37.  And even after TeamHealth argued the *Stallworth* factors in its response (ROA.3017–30), Adler did not offer a counter-analysis of the factors on reply—instead, he argued only that the factors do not apply.  *See* ROA.3048–56.  Because he failed to argue that his motion was proper under each of the factors, his arguments applying *Stallworth* are forfeited.  *See Rollins*, 8 F.4th at 397.  This Court can decline to disturb the district court's application of the *Stallworth* factors on this ground alone.

Even if this Court considers Adler's new *Stallworth* arguments (Adler Br. 45–55), the result should be the same. Adler concedes that "application" of a rule like this is left to a district court's sound discretion (*id.* at 20), and the court here did not abuse it.

### 1. Adler could have intervened years earlier.

The first *Stallworth* factor, the length of the delay, looks at "[t]he length of time during which the would-be intervenor actually [knew] or reasonably should have known of his interest in the case before he petitioned for leave to intervene." *Rotstain*, 986 F.3d at 937 (quoting *Stallworth*, 558 F.2d at 264). The district court echoed this standard in concluding that "the length of time during which Adler actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene was significant." ROA.3099.

The facts the district court relied on to support this conclusion are not "clearly erroneous." *See Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012). Although Adler now accuses the district court of conflating the issues of confidentiality (for purposes of the protective order) and sealing (Adler Br. 49), it was actually *Adler* who tied the two issues together on the first page of his motion to intervene, where he

complained that "TeamHealth designated *all* the documents it produced in this case as confidential or 'highly confidential' pursuant to a stipulated protective order," and that "[t]he parties submitted boilerplate motions to seal." ROA.2926; *accord* Adler Br. 11.

But this case is not like *Binh Hoa Le v. Exeter Finance Corp.*, where there were no separate sealing motions or orders addressing particular documents at all. 990 F.3d 410, 417–19 (5th Cir. 2021). There, the district court had "authoriz[ed] the sealing, in perpetuity, of any documents that the parties *themselves* labeled confidential," allowing them to file 75 percent of the documents in the record under seal simply because they "wanted it that way." *Id.* at 417; *see* Adler Br. 25, 47, 52. Here, by contrast, the parties entered a protective order but later litigated the confidentiality issue when Relators raised the same concerns about confidentiality and public access that Adler raises here. ROA.933, ROA.4025, ROA.4126, ROA.4184, ROA.4231, ROA.4669–70. The parties then raised the sealing issues separately, and the court entered a series of sealing orders—the first one of which restates the standard for overcoming the presumption of public access and keeping filed documents under seal. ROA.1759–60.

Critically, all this litigation was conducted in public. Anyone concerned about the confidentiality issues could have intervened when the protective order was entered in July 2019, or when Relators challenged it and raised the conflation issue in the fall of 2020. ROA.4669–70. And anyone who disagreed that the sealing standard was satisfied could have raised the issue after the first set of sealing motions and orders was decided in June 2020 (ROA.1759–60)—or, for that matter, after any of the other 28 similar orders that followed (*see supra* at 13), or after the parties notified the district court that they had settled and would soon be dismissing the case (ROA.2910, ROA.2918).

The district court calculated all the inflection points on this timeline correctly, noting that Adler had delayed "1.5 to 2.5 years," depending on whether the protective order or the first sealing order started the clock. ROA.3100. A delay of either length "weigh[ed] strongly against timeliness." *Id.* In either case, Adler's delay exceeded delays this Court has found to indicate untimeliness. *See, e.g., Rotstain*, 986 F.3d at 938 (18 months); *United States v. Covington Cnty. Sch. Dist.*, 499 F.3d 464, 465–66 (5th Cir. 2007) (15 weeks); *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) (one month); *Edwards*,

78 F.3d at 1000 (37 and 47 days); *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) (less than 3 weeks); *Engra, Inc. v. Gabel*, 958 F.2d 643, 645 (5th Cir. 1992) (8 months); *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977) ("almost a year"); *accord* ROA.3011 (citing *Covington Cnty.*, *Engra*, and *U.S. Steel*).

Adler's only professed excuse—raised for the first time in this appeal—is that he expected the district court to protect his supposed interests while the lawsuit was pending, and he did not realize until months after the case closed that (in his view) the parties and the district court had not done so.  Adler Br. 46–48.

But as the district court rightly recognized, Adler's clock started ticking when he "actually knew *or reasonably should have known* of his interest," not when he became subjectively concerned.  ROA.3099 (citing *Stallworth*, 558 F.2d at 264); *accord Rotstain*, 986 F.3d at 938.  Adler purports to "stud[y] and publish[] extensively on TeamHealth."  ROA.2927.  His online activity reveals that he followed news stories about TeamHealth and litigation it was involved in.  *See, e.g.*, @LorenAdler, Twitter (July 31, 2020, 8:48 PM), https://bit.ly/3JrVare ("[n]ew class action lawsuit [] against TeamHealth"); @LorenAdler,

Twitter (Dec. 9, 2019, 4:27 PM), https://bit.ly/3JP9Hi2 (referencing "TeamHealth").

Given Adler's professed interest in these subjects, "it is reasonable to infer that Adler knew or should have known of the publicly-accessible docket of this case at least since the July 2, 2018 Order unsealing this case." ROA.3100. Even if he felt no need to take action when the case became public, he could have done so in the two-and-a-half years after the protective order was entered, and certainly within the year and a half after the first of the publicly available sealing orders he seeks to challenge—not to mention any of the 28 sealing orders that followed.

Adler's after-the-fact argument that the district court could have changed its mind and unsealed some information for trial cannot be squared with the facts on the ground. Adler Br. 50. Adler's delay persisted despite the parties' notice of their impending settlement, throughout the four months it took them to finalize the settlement and dismiss the case, and for six more months after that. ROA.2871, ROA.2875–76, ROA.2890, ROA.2896–97, ROA.2908–12, ROA.2918, ROA.2924. Adler's choice to wait an additional six months *after the case was closed* is another "factor weighing against timeliness." *See*

*Sommers v. Bank of Am., N.A.*, 853 F.3d 509, 513 (5th Cir. 2016); *see also United States v. Allegheny-Ludlum Indus., Inc.*, 553 F.2d 451, 453 (5th Cir. 1977) (affirming finding of untimeliness where "[t]he applicants offered no compelling reason for waiting until seven and a half months after the judgment and six months after implementation of the decrees to file their motion").

Throughout the three-and-a-half years the case spent on the public docket, Adler "had [the] full opportunity to protect whatever rights he had." *Engra*, 958 F.2d at 645. He simply chose not to take it. The Court should conclude that the district court acted within its discretion in finding that Adler's delay weighs against a finding of timeliness.

### 2.    Adler's delay prejudiced the parties.

The district court was also well within its discretion in finding that Adler's delay prejudiced the parties. Indeed, it is "rare for intervention to be granted after a final order has been entered," in large part because "post-judgment intervention usually causes unjustifiable prejudice to other parties." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 250 (5th Cir. 2009). This case is no exception.

The district court was correct—and faithful to the law—when it recognized that allowing Adler to intervene would prejudice TeamHealth by forcing it to relitigate issues it reasonably assumed were resolved long ago.  ROA.3100; *accord Engra*, 958 F.2d at 645 (one's "failure to assert his [purported] rights in a timely manner" forces parties to relitigate issues they "justifiably thought w[ere] resolved").

Adler seeks to intervene for the sole purpose of relitigating the district court's sealing orders—and, apparently, the confidentiality orders that preceded them.  *See* Adler Br. 6, 11.  For years before Adler tried to intervene, TeamHealth justifiably believed those orders resolved the status of its sensitive business information and acted accordingly.  *See, e.g.*, ROA.933, ROA.1765–66.  Had Adler raised his concerns sooner, TeamHealth might have adopted a different motion-practice strategy with respect to sealing and confidentiality to safeguard its sensitive business information.  It might have even made different decisions about what information to file with the Court.  The district court acted within its discretion when it acknowledged that allowing Adler to intervene now "would force [TeamHealth] to relitigate [these] issues."  ROA.3100.

Adler's argument that the district court never fully resolved the confidentiality and sealing issues—raised for the first time on appeal and therefore forfeited (*Rollins*, 8 F.4th at 397)—also fails. Adler Br. 49–50. As the district court pointed out, TeamHealth fended off two challenges to the confidentiality designations (ROA.3100), during which the issue of public access was raised and rejected. *See* ROA.4669–70 (rejecting argument that "this information should be made available, including on the Court's docket, for the public to see"). And sealing issues were expressly raised and decided on 30 separate occasions. *See, e.g.*, ROA.1759–60 (sealing document after accepting argument that "the public disclosure of [confidential information] creates a substantial risk of harm that outweighs the strong presumption in favor of public access to judicial proceedings"). In the face of this publicly available information, Adler's argument that the district court might change its mind regarding its sealing orders is unreasonable. *See* Adler Br. 50.

The district court also acted within its discretion when it appreciated that Adler's broad request for documents would inflict "duplication, inefficiency, and increased costs" on TeamHealth ROA.3100 (quoting *Rotstain*, 986 F.3d at 938). Adler does not dispute

41

this, but argues that the relevant inquiry is the prejudice caused by his delay, not the prejudice that would result from forcing TeamHealth to defend the district court's sealing orders in general.  Adler Br. 50–53.

This is a distinction without a difference.  Had Adler intervened at the appropriate time, the issues he raises years later could have been settled contemporaneously with the motion practice he now seeks to revisit.  Allowing him to intervene now would necessitate a complete redo of that motion practice.  It would also force the parties to scramble to reassemble case teams that were disbanded when the case settled two years ago—and even if the original team members are still available, the details of the case can hardly be expected to have remained fresh in their minds.  This is textbook "duplication, inefficiency, and increased costs." *Rotstain*, 986 F.3d at 938.  And it is a far cry from the situation in *Ford v. City of Huntsville* (*see* Adler Br. 51), where the prospective intervenor sought access to confidential settlement documents just 22 days after the confidentiality order entered.  *See* 242 F.3d 235, 239 (5th Cir. 2001).  Here, the timeline is measured not in days, but in months and years.

Ultimately, the district court was within its discretion to conclude that Rule 24(b) does not require parties or courts to tolerate such avoidable inefficiency and prejudice.

### 3. The district court correctly assessed the minimal prejudice to Adler.

"The third timeliness factor is '[t]he extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied.'" *Stallworth*, 558 F.2d at 265. The district court acted within its discretion when it found that "Adler will suffer little, if any, prejudice." ROA.3101.

"If the proposed intervenors' interests are adequately represented, then the prejudice from keeping them out will be slight." *Rotstain*, 986 F.3d at 939 (citation omitted). The district court considered Adler's arguments about access to information about health care pricing and determined that his "interests related to sealing and confidentiality were adequately represented earlier in this case by Relators." ROA.3101.

Adler's argument that Relators challenged only TeamHealth's confidentiality designations and did not oppose the district court's sealing orders (which Adler wrongly characterizes as non-final) again

43

confuses the confidentiality and sealing issues. *Id.* at 54. Relators

challenged the confidentiality designations in the fall of 2020 for the

purpose of filing the designated information publicly rather than under

seal. ROA.4669. Relators argued at that time that "this case is so

uniquely of public interest that we believe that this information should

be made available, including on the Court's docket, for the public to

see." *Id.* Relators thus pursued the same interest Adler does here:

making TeamHealth's confidential information public. That they failed

does not mean the interest in public access was not "adequately

represented." *See* ROA.3101. And because the district court was

actively engaged in every relevant hearing and analyzed every motion,

the adequacy determination is "best left to the trial court 'in light of the

relevant facts and circumstances of the particular case.'" ROA.3101

(quoting *Vantage Health Plan*, 913 F.3d at 450).

The district court was also right that, "to the extent Adler seeks

only 'general' information, that information could be sought elsewhere,

without unsealing." *Id.* Adler professes a "strong interest in

understanding the allegations and the litigation process," implying that

44

the operative complaint, summary judgment briefing, and pretrial order are being withheld from him.  Br. 53.

Critically, though, *these documents are already available on the public docket.  See, e.g.*, ROA.3365–416, ROA.3605–56, ROA.3810–29, ROA.3883–3903 (summary judgment briefing); ROA.3145–267 (third amended complaint); ROA.4461–88 (amended pretrial order).  Unlike in *Binh Hoa Le*, where "nearly three-quarters of the record" was entirely "hidden from public view" (990 F.3d at 417, cited in Adler Br. 41–42), here, public versions have been filed that redact only information so sensitive as to overcome the presumption of public access.  *See, e.g.*, ROA.2205–07 (granting motion to keep sealed "certain portions of documents" and "certain portions of a sealed hearing transcript" where the "risk of harm [from disclosure] outweighs the strong presumption in favor of public access").  Adler has never said that he tried to make use of these public versions but could not access certain specific information that he needed.  The district court was within its discretion to find no prejudice under these circumstances.

45

**4.    Any unusual circumstances were either neutral or favored TeamHealth.**

The court also acted within its discretion in finding that the fourth *Stallworth* factor—"unusual circumstances" that might justify a movant's failure to intervene sooner (558 F.2d at 266)—did not favor excusing Adler's untimeliness.  ROA.3101 (finding factor "neutral").

*Stallworth* hypothesized that if a prospective intervenor "could advance a convincing justification for his tardiness, such as that for reasons other than lack of knowledge [of his interest] he was unable to intervene sooner, this would militate in favor of a finding that his petition was timely."  558 F.2d at 266; *see, e.g.*, *Ross v. Marshall*, 426 F.3d 745, 756 (5th Cir. 2005) (unusual circumstances where party tried to deny intervenor insurer opportunity to seek appellate review of judgment against insured); *Doe #1 v. Glickman*, 256 F.3d 371, 379 (5th Cir. 2001) (unusual circumstances where intervenor filed a lawsuit that was stayed pending outcome of second lawsuit before intervening in second lawsuit).

Adler offers no "convincing justification for his tardiness."  *See Stallworth*, 558 F.2d at 266; Adler Br. 54–55.  He does not reiterate his new excuse that he assumed the district court would revisit the sealing

46

issue sua sponte. *See* Adler Br. 46–48. Instead, he argues that he seeks to intervene regarding "collateral relief" rather than the merits. But this does not "justif[y] . . . his tardiness." *See Stallworth*, 558 F.2d 266. The district court was within its discretion to find that "Adler has not made a convincing showing of any unusual circumstances that militate in favor of a determination of timeliness." ROA.3101.

\*    \*    \*

In sum, the district court's findings on each *Stallworth* factor—and its decision to apply *Stallworth* in the first place—were sound. Intervention was therefore properly denied on timeliness grounds. The appeal can and should be dismissed on this basis alone.

## II. The district court did not abuse its discretion in denying permissive intervention under Rule 24(b).

Even if Adler's motion were timely, he would still have to "ha[ve] a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Adler cannot meet these requirements—or the others Rule 24 requires. And even if he could, the decision to permit (or deny) intervention under Rule 24(b) "is wholly discretionary and may be denied even when the requirements of Rule 24(b) are satisfied." *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th

Cir. 2021) (quotation omitted).  The district court was well within its discretion to deny Adler's request for permissive intervention here.

## A.   The district court did not err in concluding that Adler shares no "claim or defense" or "common question" with the underlying FCA action.

Adler seeks "permissive intervention" under Rule 24(b) (ROA.2935), which authorizes "[a] district court [to] permit intervention if a timely motion is filed and the applicant 'has a claim or defense that shares with the main action a common question of law or fact.'" *Rotstain*, 986 F.3d at 942.  The district court found "that Adler has not alleged a 'claim or defense that shares with the main action a common question of law or fact' under Rule 24(b)(1)(B)."  ROA.3102.  This was a correct application of the rule's plain text.

### 1.    Adler has no "claim or defense" at all.

Adler has no claim or defense, as those terms are defined.  A claim is "[a]n interest or remedy recognized at law"—a synonym for "cause of action."  *Claim*, *Black's Law Dictionary* (11th ed. 2019).  A defense is "[a] defendant's stated reason why the plaintiff . . . has no valid case," "answer, denial, or plea," or "method and strategy in opposing the plaintiff."  *Defense*, *Black's Law Dictionary* (11th ed. 2019).

48

In this circuit, Rule 24 means what it says: an intervenor who seeks affirmative relief must state a claim.  When intervention is opposed, the court must "make an assessment of whether the proposed intervenor's complaint states a cause of action."  *Cf. Pin v. Texaco, Inc.*, 793 F.2d 1448, 1450 (5th Cir. 1986) (explaining need for claim or defense in context of Rule 24(c)'s pleading requirement, *see infra* II.B.1); Charles Alan Wright et al., *Federal Practice and Procedure* § 1914 (3d ed. 2007) ("The proposed pleading must state a good claim for relief or a good defense.").

This reading of "claim" as "a cause of action" is consistent with how the Advisory Committee on Civil Rules has historically approached that language.  In 1946, the committee considered a proposal to replace "claim or defense" in then-Rule 24(b)(2) (now Rule 24(b)(1)) with the phrase, "[a] pecuniary or other interest [that] may be adversely affected by a determination of a question of law or fact in the main action."  Advisory Committee on Rules for Civil Procedure, Meeting Minutes (Mar. 1946), Vol. 1, p. 198, https://bit.ly/3Z3vU08.  But the committee rejected the invitation to broaden the rule in this way.  *Id.* at 200

(expressing concerns about "going wide" by adopting that "very extensive" suggestion).  An "interest" is not enough.

"Claim or defense" still means just that: a permissive intervenor needs a claim or defense.  The court here found that "Adler has alleged no . . . 'claim or defense' that provides a basis for permissive intervention under Rule 24(b)."  ROA.3102.  Adler admitted below that he "has no pending or potential legal claims against TeamHealth," and his brief skips over this textual prerequisite entirely.  ROA.2933; *see* Adler Br. 37–39.  The district court's decision to deny intervention can and should be upheld on this ground.

## 2.     There is no "common question of law or fact."

Instead of identifying a claim or defense, Adler skips straight to the "nexus requirement": an intervenor's "claim or defense" must "share[] with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B); *see* Adler Br. 37–39.  But as the district court pointed out, this presupposes the existence of a claim or defense, and "[t]he desire to intervene to pursue the vacating of the protective order and/or the unsealing of the record is not a justiciable controversy *or claim*."  ROA.3102 (emphasis added) (quoting *Deus v. Allstate Ins. Co.*,

15 F.3d 506, 525 (5th Cir. 1994)).  The court was right that whether

Adler's asserted "'interest' shares a nexus with the main action a

common question of law or fact is beside the point."  ROA.3102–03.

Adler's nexus argument would fail in any event.  He contends that

(1) his motion to unseal necessarily shares common questions of law

and fact with the main action, and (2) this Court allows non-parties who

seek to challenge sealing orders in the main action to intervene under

Rule 24(b).  *See* Adler Br. 37–39.  Neither is correct as stated.

*First*, Adler's asserted interest in unsealing shares no common

question of law or fact with the FCA allegations that were already

litigated in this case.  *See* Adler Br. 38.  The intervention rule was

designed "to prevent multiple lawsuits where common questions of law

or fact are involved but is not intended to allow the creation of whole

new lawsuits by the intervenors."  *Deus*, 15 F.3d at 511; *accord Wash.*

*Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d

Cir. 1990).  The rule was supposed to preserve judicial resources and

prevent prejudice to the intervenors from the impact of an unfavorable

decision.  But here, as in *Deus*, where "[t]he only purpose of the

attempted intervention was to gain access to documents and testimony

that are subject to the protective order," Adler seeks to expend additional judicial resources in an FCA matter that has no bearing on him. *See* 15 F.3d at 525.

*Second*, this Court does not grant a blank check to anyone who wishes to intervene after the fact, simply because they seek to unseal documents. *See* Adler Br. 38. In *Newby v. Enron Corp.*, where this Court permitted the Texas Board of Accountancy to intervene in an action against Enron, there *were* common questions: the Board "ha[d] questions of fact and law in common with the Enron litigation"—the main action—"since it is investigating alleged audit failures that may have led to Enron's collapse to determine whether any Texas-licensed CPAs violated the Public Accountancy Act or the Board's rules." 443 F.3d 416, 422 (5th Cir. 2006). Intervention was permitted in *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, for the same reason—and intervention was not contested. 229 F.R.D. 126, 130 (S.D. Tex. 2005) (cited in Adler Br. 39). Adler has no such ties to the FCA case here.

Adler's position also finds no support in the dictum in *In re Beef Industry Antitrust Litigation*, which observed that "the procedurally

correct course for [legislative officials seeking access to documents subpoenaed from one of the parties] would have been first to obtain status in the suits as intervenors." Adler Br. 38 (quoting 589 F.2d 786, 789 (5th Cir. 1979)).  In context, this observation does not support the proposition that intervention must be allowed here.  This Court was merely responding to the officials' failure to comply with the procedural requirements of Rule 24(c); rather than filing a formal motion to intervene, they sought leave to file a motion in support of a pending motion by one of the subpoenas' targets for the court's permission to comply with the subpoenas.  *See In re Beef*, 589 F.2d at 788.

The dictum Adler cites simply pointed out the proper procedural mechanism: the officials should have moved to intervene first.  *See SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 602 n.1 (9th Cir. 1978) (citing *In re Beef* for the uncontroversial proposition that "anyone who wishes to be a party to the action may bring a motion to intervene").  This Court did *not* guarantee that such a motion would have satisfied Rule 24's requirements simply because it sought access to documents.

Faced with a lack of helpful precedent in this Court, Adler and Amici urge this Court to follow other circuits and conclude that a non-

party who seeks to access documents in a case by challenging a sealing or protective order necessarily satisfies the first prong of Rule 24(b)(1). Adler Br. 38; Amici Br. 26–27. True, courts in certain other circuits have subordinated Rule 24(b)'s "common question" requirement to the atextual—and illogical—principle that the parties and the prospective intervenor share the general public's interest in access to judicial records. *See, e.g.*, *Flynt v. Lombardi*, 782 F.3d 963, 966–67 (8th Cir. 2015) (citing *Jessup v. Luther*, 227 F.3d 993, 999 (7th Cir. 2000)) (both cited in Adler Br. 39).

But this Court need not and should not indulge that fiction, which is contrary to the plain text and purpose of Rule 24(b). This case illustrates the consequences of ignoring Rule 24's "common question" requirement. Because the underlying FCA case raised different questions of law and fact than Adler's desire to intervene to unseal records for his research, allowing him to intervene now would essentially kick off a new lawsuit that would require the expenditure of additional resources from the court and the parties. *See supra* I.B.2. And to the extent that Adler's asserted interest in unsealing documents does raise common questions, the issues related to sealing and

confidentiality were resolved long ago. *See* ROA.3100 (sealing issues "were decided nearly a year prior to Adler's Motion to Intervene"). The district court acted within its discretion to apply Rule 24(b)(1) as written, as nothing in this Court's precedent compelled it to rule otherwise.

Amici add that "it would not have been an abuse of discretion for the district court to grant intervention under Rule 24(b)" in similar circumstances. *See* Amici Br. 26 (citing *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1173 n.12 (11th Cir. 2019)). Maybe so. But the key word is *discretion*—and the district court exercised it to deny intervention in this case. Amici do not contest that intervention is "wholly discretionary with the district court." *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (per curiam). Indeed, the court's discretion is so broad in this area that, even if it had found Rule 24(b)'s requirements to be satisfied, it *still* could have denied intervention. *See Turner*, 9 F.4th at 317.

## B.   There were also other, independent grounds on which to find that Adler failed to satisfy Rule 24.

Even if Adler had a "claim or defense" and a "common question," he fails to satisfy Rule 24 for two other separate and independent

reasons: (1) he did not file a pleading as Rule 24(c) requires, and

(2) allowing him to intervene would prejudice the parties in violation of

Rule 24(b)(3).  While the district court did not need to reach these

issues, this Court "may affirm for any reason supported by the record."

*LLEH, Inc., v. Wichita County*, 289 F.3d 358, 364 (5th Cir. 2002).  And

because Adler did not address these requirements, he has forfeited any

argument to the contrary.  *See United States v. Bowen*, 818 F.3d 179,

192 n.8 (5th Cir. 2016).

### 1.    A pleading was required.

In addition to the requirements of Rule 24(b)(1), a motion for

permissive intervention must "be accompanied by a pleading that sets

out the claim or defense for which intervention is sought."  Fed. R. Civ.

P. 24(c).  Rule 7 defines a pleading to include complaints, answers, and

replies to answers.  Fed. R. Civ. P. 7(a).  Adler's failure to file such a

pleading listing his claims "alone would warrant denial of the motion."

*Lexington Ins. Co. v. Caleco, Inc.*, 2003 WL 21652163, at *5 (E.D. Pa.)

(citing, inter alia, *SEC v. Inv'rs Sec. Leasing Corp.*, 610 F.2d 175, 178

(3d Cir. 1979)).

On the rare occasion this Court has addressed the pleading requirement, the panel excused the failing, but emphasized "that a formal motion for intervention should have been filed pursuant to Rule 24(c)." *In re Beef*, 589 F.2d at 789. The Court cautioned that future litigants should not attempt to use this opinion to circumvent the clear requirements of the rule." *Id.* Rule 24's pleading requirement is more than a formality. It "ensure[s] that parties have advance notice of the claims that an intervenor plans to make" (*Inv'rs Sec. Leasing*, 610 F.2d at 178) and "is integral to the Court's necessary analysis of the legal rights asserted by the intervenor, and concomitant issues such as standing and jurisdiction." *St. Charles Tower, Inc. v. County of Franklin*, 2009 WL 3852462, at *1 (E.D. Mo.).

This Court should strictly construe the requirement. Several other circuits have done so. *See Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205 n.6 (1st Cir. 1998) (failure to accompany motion to intervene with pleading setting forth claim or defense "ordinarily would warrant dismissal"); *Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759, 761 (2nd Cir. 1968) ("reference in [] motion papers to the allegations of the original complaint was insufficient to comply with the requirements

of Rule 24(c)"); *Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987) (Rule 24(c) "is unambiguous in defining the procedure for an intervenor"); *Inv'rs Sec. Leasing*, 610 F.2d at 178 ("Because the requirements of rule 24(c) were not complied with, [prospective intervenors] were not proper parties in the district court").

Adler's failure to file a pleading provides an alternative ground on which to find that the intervention was properly denied.

### 2. Allowing Adler to intervene would unduly prejudice the parties.

"[W]hether the intervention will unduly delay or prejudice the adjudication of the original parties' rights" also bears on the district court's exercise of discretion. Fed. R. Civ. P. 24(b)(3). Here, the parties would surely suffer such prejudice. In the *Stallworth* context, Adler argues that there would be no prejudice because he seeks relief collateral to the merits of the underlying action, and the parties already settled the case and stipulated to a dismissal. Adler Br. 41. But as the district court pointed out, Adler's "broad request for all sealed documents in the case" would force the parties "to relitigate issues that they justifiably thought were resolved," expending significant time and resources in the process. ROA.3100; *accord Engra*, 958 F.2d at 645

(same); *Lucas v. McKeithen*, 102 F.3d 171, 173 (5th Cir. 1996) (affirming order denying intervention where, inter alia, "revisiting of issues previously addressed at length by the parties" caused prejudice). *See supra* I.B.2. This is typical of "post-judgment intervention, [which] usually causes unjustifiable prejudice to other parties." *In re Lease Oil*, 570 F.3d at 250.

The requirements of Rule 24(b) are not satisfied. But even if they were, the district court would still have been within its discretion to deny intervention here. *See Turner*, 9 F.4th at 317. The Court may affirm on this basis as well.

## III. Standing was required to intervene in this closed case— and Adler does not have it.

The district court was correct in holding that Article III "standing . . . is a requirement to intervene in a closed case under Fifth Circuit precedent." ROA.3096. It was also correct in finding that "Adler has not done so, and intervention is not proper." ROA.3097.

Preliminarily, Adler argues that "this case is not fully closed." Adler Br. 29 n.5. According to Adler, it is still pending because the district court "retain[ed] jurisdiction for the purpose of enforcing the settlement agreement between the parties." *Id.* (quoting ROA.2924).

But what matters for purposes of the standing question is that the case was dismissed.  *See* ROA.2923–24.  As the district court recognized, "[a] dismissal with prejudice is a final judgment on the merits and closes the case."  ROA.3097 (citing *Brooks v. Raymond Dugat Co.*, 336 F.3d 360, 362 (5th Cir. 2003)).  The district court properly treated the underlying case as closed, and as a result, standing to intervene was required.

### A.    The Court's precedent requires Article III standing to intervene in a long-closed case for *any* reason, unsealing or otherwise.

The district court correctly recited this Court's rule: "[I]n the absence of a live controversy in a pending case, an intervenor would need standing to intervene."  ROA.3095 (quoting *Newby*, 443 F.3d at 422); *accord Allen-Pieroni v. White*, 694 F. App'x 339, 340 (5th Cir. 2017) (quoting *Newby*); *Deus*, 15 F.3d at 525 (requiring independent Article III standing to intervene to challenge protective and sealing orders).  This rule makes doctrinal sense: for purposes of Article III, the "case or controversy" was between the Relators and TeamHealth, and it ended when the case was settled and dismissed.  *See* U.S. Const.

art. III, § 2, cl. 1.  A new case or controversy is therefore needed for the district court to have the authority to act.

Adler admits that "*Newby* reflects the general rule."  Adler Br. 28. But he argues that the requirement "does not apply where, as here, the intervenor only seeks to unseal the court record."  *Id.*  This argument is foreclosed by *Deus v. Allstate Ins. Co.*, where this Court held that "[t]he desire to intervene to pursue the vacating of [a] protective order and/or the unsealing of the record is not a justiciable controversy or claim, absent some underlying right creating standing for the movants."  15 F.3d at 525 (quoted in ROA.3095).  The Court explained that because "[t]he only purpose of the attempted intervention was to gain access to documents and testimony that are subject to the protective order," the prospective intervenors "ha[d] no rights or claims that they wanted the district court to adjudicate."  *Id.* at 526.  Their mere desire for information did not confer a "personal interest affording them standing to intervene."  *Id.*  Adler finds himself in the same situation, and the result was the same: intervention was properly denied.  *Id.*; ROA.3098.

Again, Adler looks to other circuits' case law to try to circumvent this Court's precedent.  But even if this Court were at liberty to ignore

61

*Newby* and *Deus*—and it is not (*PHI Grp.*, 58 F.4th at 842 n.3)—it should not do so. The courts Adler cites have, by their own admission, flexibly interpreted their jurisdictional mandates and crafted "exceptions" to the Constitution's standing requirement. *See, e.g., Nat'l Children's Ctr.*, 146 F.3d at 1047 (cited in Adler Br. 29) ("Notwithstanding the general requirement of an independent jurisdictional basis, courts have crafted a narrow exception when the third party seeks to intervene for the limited purpose of obtaining access to documents protected by a confidentiality order."). As a result, these courts have not carefully considered whether would-be intervenors have standing to intervene.

This Court should not follow them down that path—and indeed, the Constitution does not permit it to. "Article III standing is a jurisdictional requirement" (*NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010)), and the Supreme Court has rejected such flexible approaches to jurisdiction, which "carr[y] the courts beyond the bounds of authorized judicial action." *Cf. Steel Co.*, 523 U.S. at 94 (rejecting "doctrine of hypothetical jurisdiction").

Accordingly, the Court should decline to adopt the "exception" to intervenor standing purportedly adopted in the Third, Eighth, Ninth, and D.C. Circuits.  Adler Br. 29.  Instead, it should reaffirm its own decisions in *Newby* and *Deus*, which require a prospective intervenor in a closed case to demonstrate standing.  Because the district court applied that rule as it was required to, it did not abuse its discretion in concluding that Adler lacked standing to intervene.  ROA.3098.

## B.    Adler's assertions of Article III standing in a general sense are insufficient.

The district court also correctly recognized that "whether one has standing to intervene in a closed case is separate from whether one has standing to move to unseal" generally.  ROA.3095.  Adler argues that the mere fact that he, as a member of the public, seeks and is being denied access to the court record is itself an Article III injury.  Adler Br. 31.  Under *Deus*, however, such a general interest in access "is not a justiciable controversy or claim."  *See* ROA.3098 (citing 15 F.3d at 525).  There must be "some underlying right creating standing."  *Deus*, 15 F.3d at 525.

Adler believes the information sealed in this case would be helpful to his research and writing and cannot be found elsewhere.  Adler Br.

32. But as the district court rightly concluded, this is not a basis for standing either. ROA.3097. Adler must demonstrate standing specific to "*this* case." *Allen-Pieroni*, 694 F. App'x at 340 (citing *Deus*, 15 F.3d at 525–26). The "case or controversy" here was between Relators and TeamHealth, and as the district court pointed out, "Adler admits that he 'has no pending or potential legal claims against TeamHealth.'" ROA.3097 (citing motion to intervene). He "only has a need for the documents" and thus had no independent basis for standing to intervene in this FCA case. *See Deus*, 15 F.3d at 525; *see, e.g.*, *Allen-Pieroni*, 694 F. App'x at 340 (no standing despite intervenor's assertion that "she ha[d] a strong personal interest in the sealed discovery . . . because her own case is factually related").

Adler's final standing argument is one of policy: if intervening to unseal the court record is not "a justiciable controversy or claim," there is no way for the public to enforce its rights of access. Adler Br. 37 (quoting *Deus*, 15 F.3d at 525). But denying intervention here would not prevent the public from gaining access to court records under other circumstances. The rule of *Deus*, which has been in effect for three decades, merely requires a prospective intervenor to either move to

intervene while the controversy is still live or to show some particularized harm that relates to the underlying case. To comply here, Adler simply needed to intervene earlier. He could have done so and did not.

### C. The district court cannot exercise its inherent authority—or *any* authority—without jurisdiction.

Finally, Adler tries to bypass the standing requirement by invoking the district court's inherent authority. Adler Br. 22. Because he did not ask the district court to exercise its inherent authority when the case was before that court, the argument is forfeited. *See Bowen*, 818 F.3d at 192 n.8.

In any event, the argument is a non-starter, as "inherent authority" is no substitute for standing. "[S]tanding is a jurisdictional requirement"—an absolute prerequisite to *any* exercise of authority by a court. *NAACP*, 626 F.3d at 237 (5th Cir. 2010); *see also Steel Co.*, 523 U.S. at 94 ("Without jurisdiction the court cannot proceed at all in any cause.") (quoting *Ex parte McCardle,* 74 U.S. 506, 7 Wall. 506, 514 (1869)).

Further, inherent authority is itself a matter of discretion. Adler argues that unsealing records is a mere docket-management matter,

and "[t]he district court's inherent power to manage access to its docket does not end when a case is closed." Adler Br. 22. Exercises of inherent authority are discretionary, however, and to the extent "the district court has inherent power to unseal its own court records" (Adler Br. 23), it declined to exercise it.

In the process, the district court rejected the line Adler tries to draw between "collateral issues" and the merits of this particular case. *See id.* It rightly reasoned that "whether or not document unsealing is a collateral issue is not the relevant inquiry." ROA.3096. The key question was "whether Adler has, in the first place, Article III standing to intervene in a closed case." *Id.*

In sum, Adler cannot get around this Court's intervenor-standing requirement, whether by urging the Court to apply out-of-circuit precedent rather than its own, by asserting a generalized injury that has nothing to do with the claims in this FCA case, or by asking the Court to ignore standing and instead look to the district court's inherent authority. The lack of standing is fatal to Adler's motion to intervene, and ultimately to this appeal. "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is

66

that of announcing the fact and dismissing the cause." *McCardle,* 7 Wall. at 514.

## CONCLUSION

For any and all of these independent reasons, this Court should hold that the district court did not abuse its discretion in denying Adler's motion to intervene and dismiss this appeal for lack of jurisdiction.

March 29, 2023

s/ *Linda T. Coberly*
Linda T. Coberly
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600
lcoberly@winston.com

Thomas Melsheimer
Michael Brett Johnson
Chad B. Walker
William G. Fox
Winston & Strawn LLP
2121 North Pearl Street
Dallas, TX 75201

Lauren Gailey
Winston & Strawn LLP
1901 L Street, NW
Washington, DC 20036

*Counsel for Defendants-Appellees*

# CERTIFICATE OF SERVICE

I certify that, on March 29, 2023, this document was served via the

Court's CM/ECF system on all counsel of record.

s/ *Linda T. Coberly*
Linda T. Coberly

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), and 5th Cir. R. 32.1:  this document contains 12,930 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it this document has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2012.

s/ *Linda T. Coberly*
Linda T. Coberly